EDMUND ST. LEGER AND OTHERS : APPEAL FROM PROBATE.

The technical rules of pleading do not apply to the issues made on the trial of the validity of a will in the superior court on an appeal from probate.

Reasons of appeal are not necessary for the purpose of making an issue or issues to be tried on such an appeal. The statute requires that the validity of the will be tried, and this issue is therefore implied, and if an issue is made on any special fact affecting the validity of the will it is only subordinate to the main issue, which the jury should try and determine.

Where on such an appeal the appellants filed several distinct reasons of appeal, and the appellees replied that they were "severally untrue and if true insufficient," and the jury returned a verdict that they "found the issue in favor of the appellees," it was held to be a good verdict and a sufficient finding by the jury of the validity of the will.

Reasons of appeal under our practice constitute a notice to the adverse party of the matter relied on in opposition to the will, to which the party filing them will be limited in his evidence.

Where a judge instructed the jury that it was enough if the testator "had sufficient intelligence and memory to fairly and rationally comprehend the effect of what he was doing, to appreciate his relations to the natural objects of his bounty and understand the character and effect of the provisions of the will, that he should have a reasonable understanding of the nature of the property he wished to dispose of and of the persons to whom and the manner in which he wished to distribute it." Held, on motion for a new trial, to be unexceptionable.

Where the court was requested to instruct the jury that if they should not find that the testator at the time of signing the will had sufficient active memory to collect in his mind without prompting the particulars of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive their obvious relations to each other and be able to form some rational judgment in relation to them, they should render a verdict against the validity of

St. Leger's Appeal from Probate.

the will, it was held that, though an apt and intelligible description of the de-degree of capacity required, yet it was not well adapted to practical use as a guide to the jury, and that the court properly gave them the instructions above stated instead.

The rule laid down with regard to the measure of the soundness of a testator in *Kinne* v. *Kinne,* 9 Conn., 102, specially approved.

Where the appellants requested the court to charge the jury that, if the relation of attorney and client subsisted between the testator and one of the legatees at the time of the making of the will, and such legatee drew the will, they should find the legacy void, unless means were employed by the intervention of a third person, as adviser or otherwise, to prevent such relation from influencing the testator to make the bequest, it was held that the court committed no error in refusing so to charge.

In such a case undue influence is presumed, and the absence of it is to be shown by the party sustaining the legacy, but the presumption is one of fact and not of law, and may be rebutted by any proper evidence which satisfies the jury. There is no rule of law that requires the intervention of a third person.

APPEAL from a decree of a probate court approving the will of William St. Leger, taken to the superior court in Fairfield county; tried to the jury before *Phelps, J.*

The following reasons of appeal were filed by the appellants:

" 1. That the said William St. Leger never signed, sealed, and published said paper writing in question, as his last will and testament.

" 2. That said William St. Leger, at the time of the making of said paper writing, so purporting to be his last will, was not of sound mind and capable of making a valid disposition of his property by will.

" 3. That the said William St. Leger for one year or more next preceding his death, was grossly intemperate, indulging daily in the excessive use of spirituous liquors, and continuing such indulgence to the time of the pretended execution of said paper writing, and to the time of his death, by which his health was greatly and rapidly impaired, his mental as well as bodily strength greatly weakened and enfeebled, his natural affections toward his kindred turned to hatred, and his intellect deranged ; and that while in said weak, enfeebled and deranged state of mind, by undue influence exerted upon him, he was induced to execute, and controlled by said influ-

ence did execute, said paper writing as his will, and while incapable of comprehending the provisions of and the dispositions contained in the same, and without a knowledge of the contents thereof.

"4. That James C. Loomis, named in said paper writing as a legatee of the sum of $5,000, whose son also is named as a legatee therein, wrote the said paper writing so purporting to be the will of said William St. Leger, and at the time the same was so written by him, and at the time of the pretended execution thereof by the said William, he, the said Loomis, was, and for a long time prior thereto had been, the attorney and legal adviser of the said William St. Leger, and that the influence of said relation of attorney and client over and upon the weakened and deranged intellect of said William, at the time of the execution of said paper writing, was so great as to induce, and did induce the said William to make said last mentioned legacies contrary to his own free and unbiased will.

"5. That Thomas J. Synnott, named in said paper writing as a legatee of the sum of $10,000, and as a trustee of another legacy of $5,000 for the use of St. Augustine Church, and, with the other executors of said pretended will, a trustee of all the residue of the estate of said William St. Leger, of great value, one-half of the same for the use of said St. Augustine Church, was at the time of the execution of said paper writing, and for a long time prior thereto, a priest of the Roman Catholic Church in said Bridgeport, in the faith of which church the said William St. Leger had been reared, and to which he then belonged as a member. That the said Thomas J. Synnott was also in the said last sickness of said William St. Leger his confessor according to the practice of said church, and the said William St. Leger in his said last sickness believed that it was needful to his soul's salvation to obtain absolution of his sins through and by the means of said Synnott, who was the only priest of his own faith who had access to him. That the said Synnott, by means of his priestly office, acquired and exerted undue influence over the said William St. Leger in his last sickness, and, while his mind and body

were prostrate with disease, and weakened and enfeebled thereby, removed him to his, the said Synnott's, private house, and there, by the exercise of said undue influence upon the said William St. Leger, induced and procured him to make the aforesaid legacies to him, the said Synnott, and the other legacies contained in said pretended will, and to execute the same, without capacity to comprehend, and without a knowledge of the provisions contained in the same; and so the said paper writing was not the last will and testament of the said William St. Leger. All of which the appellants are ready to verify."

To these reasons of appeal the appellees made the following answer:

"The respondents, for answer to said reasons of appeal, say that the same are severally untrue, and, if true, insufficient."

On the trial of the case to the jury the appellees offered in evidence the will, and the testimony of the subscribing witnesses to it, and by them claimed to have proved that the testator at the time of the execution of the instrument was of sound and disposing mind. They also claimed to have proved by James C. Loomis, Esq., the draftsman of the instrument, that at the time of its execution, and when the memoranda for the draft were taken, his mind was clear and not essentially impaired, that he dictated every provision of the will intelligently and understandingly, had full knowledge of and conversed about his property, had a rational appreciation of his relations to the objects of his bounty, and a satisfactory comprehension in all their bearings of the provisions of his will.

In all the foregoing they claimed to have fully corroborated Mr. Loomis by the testimony of Rev. Thomas J. Synnott, who was present, and further claimed to have proved by several other witnesses who were more or less intimate with the testator, that his mental condition down to and after the execution of the will was not materially affected or deranged by disease, intemperance, insanity, or other cause, that his disease was pulmonary consumption, which usually leaves the mind active and clear, that the testator's mind was not seri-

ously injured by it, and that, in their opinion, based upon the knowledge they possessed and the facts which they stated, he was fully competent to make a valid testamentary disposition of his estate, and such a disposition as is evidenced by the provisions of his. will.

The appellants claimed to have proved by the witnesses offered by them for that purpose, that the testator at the time of the execution of the will was greatly enfeebled in body, and reduced to almost the last extremity of physical weakness, that his mind was proportionally exhausted, and reduced in strength, his memory and understanding greatly impaired, that he was confused in his ideas, incoherent in his speech, unable to complete simple sentences after he had commenced them, that he was dull of comprehension, stupid, deranged, delirious, entirely incapable of understanding the operation and effect of the provisions of a testamentary instrument, and of unsound mind.

The appellants requested the court to instruct the jury that if they should not find that the testator, at the time he signed and published the will, had sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were or should or might have been the objects of his bounty, and the scope and bearing of the provisions of his will, it would be their duty to find the issue on the second reason of appeal in favor of the appellants. Also that if they should not find the testator, at the time he signed and published the will, had sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them, it would be their duty to find the issue on the second reason of appeal in favor of the appellants.

The court instructed the jury that, to constitute testamentary capacity, it was not necessary that the testator at the time of the execution of the instrument should be possessed of all the physical or mental health or vigor of a person enjoying

the ordinary strength and faculties of body and mind; that he might indeed harbor insane delusions, and be an actual monomaniac on a topic entirely disconnected from the disposition of his estate, and at the same time be fully capable of making a valid will; that the law simply required that he should be possessed of sufficient intelligence and memory to fairly and rationally know and comprehend the effect of what he was doing, to appreciate his relations to the natural objects of his bounty and understand the character and consequences of the provisions of his will; that he should have a reasonable understanding of the nature of the business in which he was engaged, a recollection of the property he wished to dispose of, the persons to whom he wished to convey it, and the manner in which he desired to distribute it among them. That if the testator, at the time of the dictation and execution of the instrument in question had the degree of understanding and memory here stated, he possessed testamentary capacity, and was, in legal contemplation, of sound mind, and could make a valid will.

The appellants claimed to have proved by a large number of ꞏwitnesses, that in the disposition of his estate the testator was unduly and improperly influenced; that the Rev. Mr. Synnott, in whose favor a large provision was made, and also to the Catholic Church through him as trustee, was, prior to the last sickness of the testator, on personally very unfriendly terms with him, and that their relations with each other had been at times decidedly hostile; that the testator had no confidence in either his sincerity or integrity; that he had often and publicly spoken of him in the most harsh and severe language, and was very jealous and distrustful of the Catholic clergy, and especially of Mr. Synnott, and seldom attended his church; that when the serious and probable last illness of the testator came to the knowledge of Mr. Synnott he was frequent and assiduous in his visits and attention; that in the testator's mental debility consequent upon his extreme physical weakness, by improper importunity and solicitation he induced the testator to consent to be removed to his (Mr. Synnott's) house, and by taking advantage of him in his ex-

hausted condition, and by means of his religious office and profession, and by excessive and unreasonable persuasion and importunity, induced him to make the will contrary to his wishes and unbiased judgment; that he was present when it was dictated and executed; that after the testator was removed to his house he excluded his relatives from him, who with one exception were poor and had always previously been objects of his solicitude and assistance; that the testator had no family, and if left to himself would have made a more liberal disposition in their favor; that he lived and died in the Roman Catholic faith, was a member of Mr. Synnott's church, that Mr. Synnott was the only priest of his religious faith who had communication with him, and that he administered to him in his last illness the sacraments of that church, and was his confessor; that the will was executed on the afternoon of Friday, and the testator died on the following Sunday at noon; that when it was executed he was too weak to sign it without being raised and held up in bed, and his hand and pen held and guided by his attendants; and that Mr. Synnott, after the death of the testator, admitted to sundry persons and on different occasions that he had procured the making and execution of this will.

The appellees claimed to have fully refuted and disproved all the foregoing claims of the appellants, and to have satisfactorily shown that the testator was left entirely free to make and execute his will in his own way, and in accordance with his inclinations and wishes, and to make a voluntary, independent and uninfluenced disposition of his estate, and that he in fact did so, and that the conduct of Mr. Synnott in connection with it was perfectly unexceptionable, and free from all solicitations, importunity and impropriety.

It was admitted that at the time of the execution of the will Mr. Loomis was, and for many years previously had generally been, the attorney and legal adviser of the testator, and also that he was in fact the scrivener by whom it was drawn, and that during the last sickness of the testator Mr. Synnott was his spiritual adviser, priest and confessor.

The appellants requested the court to instruct the jury

that if they should find that the testator's intellect was in a feeble or deranged condition from intemperance, sickness or other cause, by means of which his natural affections were perverted, and while in that enfeebled and deranged state, by undue influence exerted upon him by others, was induced to execute, and controlled by such influence did execute, the paper in question, it would be their duty to find the issue for the appellants upon the third reason of appeal.

Also, that if the jury should find that the relation of attorney and client subsisted between the testator and Mr. Loomis, at the time of the making of the will, unless they should also find that means were employed by the intervention of a third person, as adviser or otherwise, to prevent said relation from influencing the supposed testator in the disposition of his property, it would be their duty to find the issue upon the fourth reason of appeal in favor of the appellants.

Also, that if the jury should find that the instrument in question was drawn by Mr. Loomis, unless they should have satisfactory proof that the testator clearly understood and freely intended to make the disposition of his property which the instrument purports to direct, it would be their duty to find the issue upon the fourth reason of appeal in favor of the appellants.

Also, that if the jury should find that Mr. Synnott was the priest of the church to which the deceased belonged, and was his confessor in his last sickness, and until the execution of the instrument in question, it would be the duty of the jury to find the issue upon the fifth reason of appeal in favor of the appellants, so far as the same relates to the legacies to Mr. Synnott, unless satisfactory proof had been made to them that the legacies were not procured by undue influence exerted by him.

Also, that if the jury should find that Mr. Synnott was the priest and confessor of the deceased in his last sickness, and until the making of the will, and that he, by means of his priestly office, had acquired and did exert undue influence on the deceased in his last sickness, and by the exercise of such

undue influence induced the deceased to make the legacies to him, and the other legacies in the will, and contrary to his free and unbiased will, it would be their duty to find the issue upon the fifth reason of appeal in favor of the appellants.

The court instructed the jury that the burden of proof was ordinarily on the party who sought to avoid the probate of a will on the ground of undue influence, and he was generally bound to show affirmatively the truth of the allegation of such influence in his reasons. But that where it arose as a legal inference from a confidential relation between the testator and other persons, and especially if those persons were legatees, and one of them also the draftsman of the instrument, the law from the circumstances raised a sufficient presumption of undue influence to change the burden of proof, and cast upon the appellees the duty of showing, by a clear preponderance of evidence, that everything connected with the making and execution of the instrument was free from impropriety and unfairness; and that the fact of the existence of the relations claimed by the appellants, and not denied by the appellees, called for careful examination by the jury of the conduct of the parties interested, and rendered it necessary that they should be satisfied that those relations had no undue or improper influence over the mind of the testator, and did not induce him to make a different disposition of his estate or any portion of it from what he would otherwise have done; and that if they were not satisfied from the evidence that the conduct of Mr. Loomis and Mr. Synnott was unexceptionable and proper, and that they in fact exerted no improper influence over the mind of the testator, and that the disposition of his estate was not changed by their relations with or influence over the testator, their verdict should be for the appellants.

The court also instructed the jury that the degree of influence necessary to be exerted over the mind of the testator to render it improper, must from some cause or by some means be such as to induce him to act contrary to his wishes, and to make a different will and disposition of his estate from

what he would have done if left entirely to his own discretion and judgment. That his free agency and independence must have been overcome, and that he must, by some dominion or control exercised over his mind, have been constrained to do what was against his will, and what he was unable to refuse and too weak to resist. But that moderate and reasonable solicitation, entreaty or persuasion, though yielded to, if done intelligently and from a conviction of duty, would not vitiate a will in other respects valid.

The jury returned the following verdict:

"*Edmund St. Leger and others: Appeal from Probate.* In this case the jury find the issue in favor of the appellees, and therefore find for the appellees to recover from the appellants their costs."

This verdict was accepted by the court and a decree passed affirming the decree of the probate court. The appellants moved for a new trial for errors in the charge of the court and in the omission to charge as requested. They also filed a motion in error, assigning the following errors as apparent on the record:

1. That it does not appear in and by the reasons, answers and pleadings in said cause, that any issue was tendered in said cause by the appellees, or joined by or between the appellants and appellees to the jury who rendered the verdict in said cause; nor does it appear in or by the said reasons or answers or pleadings in said cause, or by all of them together, that the appellants or the appellees, or any of them, ever requested any issue in fact to be tried by the jury, or ever agreed that any issue in fact might or should be tried by them.

2. That the jury did not, in and by their verdict, find that the said paper writing in the appellants' first reason of appeal mentioned, was signed and published by the said William St. Leger as his last will and testament; nor that the said William St. Leger, at the time of the making of said paper writing in said second reason of appeal mentioned, was of sound mind, and capable of making a valid disposition of his property by will; and therefore that no judgment could be legally

HARVARD LAW SCHOOL LIBRARY

rendered upon the verdict, and issues formed upon said first and second reasons of appeal, in favor of the appellees.

3. That the jury, in and by said verdict, have decided only one of the five separate and distinct issues formed by the pleadings upon the five several and distinct reasons set forth in said cause by the appellants, and have not decided the other four remaining issues, and have not, in and by their said verdict, named or indicated which of said issues they did or intended to decide, and therefore that no judgment could be legally rendered upon said verdict in favor of the appellees.

4. That the answer of the appellees to the several reasons of the appellants, set forth by them in said cause, is insufficient in the law to warrant any judgment to be rendered thereon in favor of the appellees, in this, to wit:

(1.) That it does not appear in or by the same that the appellees pleaded or alleged that said paper writing in said first reason of appeal mentioned was signed and published by the said William St. Leger as his last will and testament; or that said William St. Leger, at the time of the making of said paper writing in said second reason of appeal mentioned, was of sound mind, or that these several facts were put in issue by the pleadings in said cause, that they might be passed upon by the jury.

(2.) That all the appellees joined in the answer to all of the said reasons of appeal, whereas the said fourth reason of appeal should have been answered only by said James C. Loomis and his son, who only were interested in maintaining the legacies mentioned therein.

(3.) That it appears in and by the answer of the said appellees that they, the said appellees, pleaded, first, that the said reasons were severally untrue, and subsequently that said reasons, if true, were insufficient.

(4.) That the court erred and mistook the law in accepting said verdict, and passing judgment thereon affirming the said decree of said probate court appealed from, and adjudging said paper writing to be the last will and testament of said William St. Leger; and that the recitals contained in said decree, passed by this court, relating to the pleading

and issues formed thereby, are unwarranted by the said pleadings and prior proceedings of record in said cause; and that said decree, pleadings and record are in other respects informal, erroneous and insufficient in the law, and that judgment should have been rendered in favor of the appellants disaffirming said decree of said probate court, and not for the appellees, and the verdict of the jury set aside.

(5.) That the answer, or demurrer of the appellees, on file, and of record, alleging that the said reasons of appeal were insufficient, was a waiver of the denial of the truth of said reasons, and overruled it; and the recital contained in said decree, that " said cause was tried to the jury upon the issue formed by the denial of the truth of said reasons, and that the question of the sufficiency of said reasons was tacitly waived by the parties," was unwarranted by the pleadings and prior proceedings of record in said cause, and was erroneously inserted in and made the basis of said decree.

(6.) That the said answer of the appellees purported to be both a denial of and demurrer to the said reasons of appeal, and the issue thus formed could not be legally tried, and a verdict thereon did not warrant any judgment to be passed by the court upon said verdict.

*C. Chapman* and *Sturges*, with whom was *Treat*, in support of the motions.

*Dutton* and *Beardsley*, contra.

BUTLER, J. This case comes up on a motion in error, and also on a motion for a new trial. We do not discover in either motion any sufficient reason for disturbing the verdict.

*First.* All the errors assigned in the motion in error relate to supposed defects in the pleadings and issues joined upon the reasons of appeal, or claimed errors in respect to the form and effect of the verdict, when tested by the technical rules of the common law which govern pleadings, issues, and verdicts in civil actions. It will not be necessary to examine or consider those assigned errors in detail, for, in our opinion,

as the proceeding is statutory and special, the technical rules of the common law relied upon are not applicable to it.

The courts of probate are special and limited courts, without any common law jurisdiction, and created by statute for the probate of wills and the settlement of estates. The statute which creates them and regulates their proceedings provides that when a will is left by a decedent the executor " shall *exhibit* it for probate to the court of probate for the district where the testator last dwelt." Another section confers upon that court cognisance of the probate of wills, and adds, that it " *shall act* in all testamentary and probate matters." The same statute authorizes persons of a certain age and of sound mind to make wills, and prescribes the formalities to be observed in making them. When therefore the executor, in conformity with his prescribed duty, " exhibits " the will to the court of probate which has jurisdiction, it becomes the imperative duty of that court, of its own motion, to take the custody of it, and proceed to enquire and determine whether it was executed according to the formalities prescribed, freely, by a person of lawful age and of sound mind and sufficient capacity, and is a valid will ; and to approve or reject it accordingly. The jurisdiction is thus given, and the issue, whether a valid will or not, *prescribed by statute*, and no process, or formal propounding by the executor, was contemplated by the legislature, or is necessary to give jurisdiction or make an issue, and none are known in our practice. The issue being statutory, all the proceedings are oral and simple. If the oath has not been administered to the subscribing witnesses out of court, the executor, acting thenceforth under the order and direction of the court, procures their attendance and the court examines them, and if contestants appear they cross-examine, and produce other witnesses if they desire. Doubtless it is competent for the court of probate to order the contestants to file their objections, on its own motion, or on motion of the executor, but it is rarely if ever done. Ordinarily the enquiry is confined to the subscribing witnesses, and is preliminary to a final contest, by appeal, in the superior court.

An appeal from the judgment of a court of probate accepting or rejecting a will, takes up to the superior court for re-trial that special statutory issue, and nothing more; and the appellate court, having no jurisdiction of probate or testamentary matters, can only re-try that special issue, and affirm or reverse the judgment of the court of probate as that issue shall be determined by a jury, and certify such affirmance or reversal to that court as a guide for its further action. Every fact which shows that the will is not a valid one, whether it relates to the age or capacity of the testator, or a defective execution of the paper, or to fraud and undue influence, is material under that issue, and an element of it, and is involved in its determination. Reasons of appeal therefore are not necessary in our practice to *make issues*, and if they are filed and issues joined upon them, they are *subordinate issues*, on the *elemental facts of the main or real issue*, which the jury must try and determine. In *Comstock* v. *Hadlyme*, 8 Conn., 26, where, as here, reasons were filed and traversed, the court by Judge Williams say : " The real question to be tried was whether there was a valid will, and this question was to be decided in the same manner as if it had not been decided in the court of probate ;" and that doctrine was the basis of the decision in that case, and in the later case of *Knox's Appeal from Probate*, 26 Conn., 20, and is now fundamental in our law.

Reasons of appeal are necessary in those states where the main issue is not sent to the jury, but one or more *special issues*, real or feigned, are made up on the disputed elemental fact or facts, and are sent by the court to a jury of the same or a different court, to be tried and determined by a *special verdict;* and the court on the return of the special verdict determines the main issue in accordance with it. But in our simple practice, and under our statute, the main or real issue goes directly to the jury ; and with it go the subordinate elemental issues or facts on which it turns; and that main or real issue must be found by the jury by their verdict in some form, as the basis for a judgment by the court, or there will be a mistrial.

It is not easy to ascertain when, or in which of the three courts which have successively had appellate jurisdiction of testamentary matters, the practice of filing reasons for such an appeal was introduced in this state. Undoubtedly they have served, and now serve, a useful purpose as a notice to the opposite party of the grounds of objection to the will, which will be relied upon at the trial; and by limiting the party filing them to evidence of the objections alleged in them; and were probably introduced for that reason. But however that may be, as our law now stands, and the whole case goes to the jury, they can have no other practical effect. And, so that they are not admitted on the record to be true, it is immaterial, especially after verdict, how they are answered, or whether answered at all. In either case the technical rules of the common law relative to the formation and determination of issues cannot be applied to them. Verdicts too have been drawn in practice, by counsel, very much according to their tastes, and the form is immaterial, if the main issue, on which alone the judgment must be based, is clearly determined by them.

This view disposes of the questions on the motion in error. As there was no intentional admission of fact, the whole case went to the jury, and they found "the issue," and by intendment the real issue, and of course all elemental facts or issues, for the appellees; and that was a correct method of expressing their conclusion, and disposing of the case.

*Second.* The questions raised on the motion for a new trial will be considered in their order.

1. The appellants claim, in the first place, that the court should have charged as they requested, or otherwise than it did, on the question of capacity.

But we think differently. Since the decision of this court in *Kinne* v. *Kinne*, 9 Conn., 102, the instructions there held proper to be given to the jury have been well understood, and have been given in practice with substantial uniformity. The jury have been informed in substance, that it was not necessary that the testator should have been capable of transacting business generally; but that he had sufficient capacity

to make a will if he understood the business in which he was engaged, and the elements of it, namely, if he recollected and understood, or in other words comprehended, the nature and condition of his property, the persons who were or should be the natural objects of his bounty, and his relation to them, the manner in which he wished to distribute it among or withhold it from them, and the scope and bearing of the provisions of the will he was making; and we are not aware that any better or safer and more just guide for the jury has been or can be adopted. The charge of the court below conformed substantially to it, and we think the appellants have, in that respect, no just cause for complaint. And on the other hand, we are of opinion that the instruction prayed for ought not to have been given, if we had not, in our practice, a settled rule of our own.

Juries contain usually some new and inexperienced men. The first branch of the request was not preceded, as it should have been, by a statement that the full possession of his faculties by the testator was not necessary; and it required that he should comprehend " perfectly " the condition of his property &c.; and if given as an instruction, without such prefix and alone, as requested, to such men, they would have been in danger of being misled. The second branch of the request originated with a very distinguished jurist of another state; and as a part of a judicial opinion, intended for the profession, was an apt and intelligible description of the degree of capacity required. But it does not particularize the elements of the business, was not intended as a guide for the jury, and was not alone or in connection with the first branch of the request, a sufficient instruction for them.

2. The court did not conform to the second request of the appellants in terms, but it did in substance. The whole charge recognizes the principle that undue influence vitiates a will. The request did not define or imply what undue influence was; and the court very properly told the jury what was and what was not such influence. And in performing this plain duty the court adopted the true rule. It was not necessary for the court to tell the jury that a less degree of

influence would overcome the free agency of a weak man than was required to overcome that of a strong one. That is a matter of fact, founded on common experience, and was doubtless urged in argument to and appreciated by the jury; not a principle of law, in respect to which the court was bound to instruct them.

3. The next four requests relate to the same subject-matter and may be considered together. They assume a confidential relation between Mr. Loomis and Mr. Synnott, who were legatees, and the testator, that the law presumes undue influence from such a relation, and that the burden was upon them to show by satisfactory proof that such presumed influence did not in fact, or in any degree, induce the giving of those legacies. Thus far the court recognized the propriety of the requests, and charged the jury in conformity with them. But one of the requests went further, and asked the court to charge that, as to the legatee who drew the will, and between whom and the testator the relation of attorney and client subsisted, unless the jury should find that means were employed, by the intervention of a third person or otherwise, to prevent such relation from influencing the testator in the disposition of his property, it would be their duty to find the legacies given him and his son void. The court did not so charge, but in that omission we perceive no error.

The rule that undue influence in respect to a legacy is to be presumed, when the relation of attorney and client subsists between the testator and the legatee, and the will is drawn by the latter, is well established, and was recognized in the charge of the court. But we have been referred to no authority, and know of none, which sustains or recognizes the claim of the appellants, nor upon principle can such intervention or caution be required as matter of law. The presumption is one of *fact*—a badge of fraud, (for undue influence is a species of fraud,)—and, like other presumptions of fact, may be rebutted by any evidence which tends to show, and satisfies the jury, that in the particular case it is untrue. It is not that the *mere relation* necessarily induces or exerts an undue influence, as the request implies, (for all

legacies by clients to their attorneys are not presumptively induced by undue influence,) but because drawing the will presents an opportunity and a temptation, which, together with the personal friendship and confidence and influence of the relation, justify suspicion and the requirement from the legatee of satisfactory evidence that the opportunity was not embraced and the influence was not exerted. Sir Edward Coke *advised* the intervention of the neighbors in a class of presumptively fraudulent conveyances, but in order to furnish evidence of the *bona fides* of the transaction, not to prevent a fraud. We know of no instance where a *preventive* intervention has ever been advised. Whether the jury should or should not be satisfied, in any particular case, that the bequest was not induced by undue influence, without evidence of the precaution and intervention claimed, it is their province to determine, and the argument that they should not is for them.

When therefore the court told the jury that the presumption existed, and that it threw upon the appellees the burden of showing, by a clear preponderance of evidence, that every thing connected with the making and execution of the instrument was free from *impropriety* and *unfairness*, and that it was necessary that they should be satisfied that the relation had no undue or improper influence over the mind of the testator, and did not induce him to make a different disposition of his estate or any portion of it from what he otherwise would have done, it gave them all the instruction which the appellants could lawfully or reasonably require.

For these reasons a new trial is not advised.

In this opinion the other judges concurred, except HINMAN, C. J., who did not sit.