[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal of a decree and order of the Probate Court for the District of North Haven, Eileen B. Donahue, Judge, whereby the Last Will and Testament of Peter J. Brudz, Sr. was duly proved and approved and admitted to Probate by Probate Court Decree dated August 3, 1995. The appellants in this action are Peter Brudz, Jr., Judith M. Ghiroli and Philip w. Brudz all of the children of the deceased Testator, Peter J. Brudz, Sr. CT Page 12922
The appellees are Mary Gasorek, Executrix of the Etate of Peter J. Brudz and Maria Krawiec aka Maria Fracz, and Joseph E. DePaola. Mary Gasorek is the sister of the Testator, Peter J. Brudz, Sr. Maria Krawiec is the niece of Peter J. Brudz, Sr. Joseph E. DePaola is counsel for Maria Gasorek, Executrix of the Estate of Peter J. Brudz.
The appellants in their amended reasons for appeal dated August 6, 1996 have alleged several grounds for their appeal as follows:
 1. Improper execution of the Last Will and Testament of the Testator, Peter J. Brudz. Sr.,
2. The Testator lacked testamentary capacity,
 3. Undue influence exercised by Mary Gasorek, Maria Krawiec and Jenny Onacewicz, and
4. Revocation of said Last Will and Testament.
By way of background the Testator Peter J. Brudz, Sr., was born in Meriden, Connecticut on May 30, 1916. At a young age, perhaps 5 years old, he moved to Poland with his family but returned to the United States in 1935 in order to avoid military conscription in Poland. He again resided in Meriden, Connecticut for a period of time including 3 1/2 years in which he lived with his sister, Mary Gasorek. Upon returning to Connecticut he initially became employed delivering meat to various stores but then obtained employment at Winchester's working with machinery.
In 1945 he married his former wife Edith Brudz and moved to 24 MacArthur Road, North Haven. Connecticut. This union with Edith Brudz produced three children, namely Peter Brudz, Jr., Judith M. Ghiroli and Philip W. Brudz. In Approximately 1949 the family moved to property located at 301 Mill Road, North Haven, Connecticut, which was residential property including 10 acres which the Testator maintained as a farm during the rest of his life.
The Testator maintained the farm at 301 Mill Road raising vegetables and shrubs. He also maintained the property including building and repairing sheds, garages and outbuildings. The Testator used wood from machinery crating which he obtained from Winchester. This indicates to the undersigned a frugal lifestyle. CT Page 12923
The Testator retired from Winchester, after more than 30 years of employment.
The Testator also owned and operated a profitable landscaping business during much of his married life.
During the Testator's lifetime he owned and maintained four properties including 24 MacArthur Road, North Haven, 301 Mill Road, North Haven, 11 Cottontail Lane, North Haven and 247 Concord Street, New Haven. The property identified as 11 Cottontail Lane was built by the Testator in 1973 for his family. This new house was built at the opposite end of the farm.
The property identified as 247 Concord Street, New Haven was acquired by the Testator in 1984 at a auction. This property was in disrepair and required a great deal of rehabilitation and renovation which the Testator undertook to accomplish with the assistance of Gregory Ghiroli, who later became his son-in-law. Testimony also indicates that his son, Peter, helped in the renovation and repairs. At the time of the purchase of the property at 247 Concord Street, New Haven in 1984, the Testator was residing at 11 Cottontail Lane with his wife Edith, their daughter Judith and his mother who was quite elderly.
On July 9, 1985, the Testator brought Maria Krawiec to Connecticut to visit. The Testator did not advise his wife and/or family of his intentions to bring Maria Krawiec to the United States to visit. On her arrival, Maria resided at 11 Cottontail Lane with the Testator, Edith Brudz, Judith Brudz and the Testator's mother. This arrangement was not happily accepted by Edith Brudz nor did the children of the Testator look upon this situation favorably. The Testator continued to rehabilitate the premises at 247 Concord Street, New Haven and farm the property at 301 Mill Road. The Testator made daily trips to 247 Concord Street, New Haven in order to repair the premises, but such daily trips were interrupted by the Testator's returning to the property at 11 Cottontail Lane at noontime to make lunch for his elderly mother. In August of 1985 the Testator abruptly, without any advance notice to his family especially his wife, moved to 247 Concord Street with Maria and his mother. The Testator explained that he wished to eliminate the traveling back and forth between 11 Cottontail Lane and 247 Concord Street, have his mother close at hand in order to assist her and also prepare meals for her. Maria also accompanied the Testator to 247 Concord CT Page 12924 Street to help take care of the Testator's mother, do some cooking, laundering and help around the house and also assist in the rehabilitation and repairs. This arrangement continued until June of 1988 at which time the Testator and Maria moved to 301 Mill Road. In the meantime though, the Testator's mother died.
During this time, the marriage of the Testator and Edith Brudz eroded to the extent that both parties were contemplating divorce.
On September 29, 1987 the Testator conferred with Attorney Joseph DePaola, an attorney in North Haven, Connecticut, who for the previous two or three years had been handling certain landlord/tenant matters on behalf on the Testator. In this conference on September 29, 1987, the Testator engaged Attorney DePaola to initiate a dissolution of marriage proceeding and also to prepare a will. The terms of the will disinherited the Testator's children and his spouse, devised the real estate known as 24 MacArthur Road, North Haven to Maria, and the rest, residue and remainder of the Testator's state equally to Maria and his sister Mary Gasorek. Lastly, Mary Gasorek was nominated as Executrix of the decedent's Last Will and Testament. Attorney DePaola being ever so cautious reconfirmed the Testator's testamentary intentions to disinherit his spouse and children. Thereafter, Attorney DePaola prepared the Last Will and Testament pursuant to the Testator's instructions. On October 2, 1987 this will was duly signed and executed by the Testator.
In accordance with the Testator's directions, Attorney DePaola commenced dissolution of marriage proceeding which continued in acrimonious fashion until May of 1988 at which time the marriage of Edith and Peter Brudz, Sr. was dissolved in an uncontested dissolution of marriage proceeding. Despite the acrimonious dissolution of marriage proceedings, Peter Brudz, Jr. acted as a negotiator and mediator and with the help of family relations personnel at Superior Court, was able to achieve an acceptable resolution of the issues between Edith and Peter Brudz, Sr. During the dissolution of marriage proceedings, the Testator resident at 247 Concord Street but visited at 11 Cottontail Lane on a daily basis to confer with his spouse Edith Brudz. The children of the Testator were not in favor of their parents becoming divorced and attempted to dissuade the Testator from continuing the dissolution of marriage proceedings. The Testator perceived the children as siding with their mother which resulted in the children falling into disfavor with the Testator. CT Page 12925 The Testator also was of the opinion that his children were not rendering necessary and sufficient help to him including helping on the farm. There was an obvious lack of social rapport between the children and the Testator. Further when the Testator was hospitalized in 1986 for heart problems the children did not visit him and/or comfort him.
A short time after the dissolution of marriage decree in May of 1988, (specifically June of 1988,) the Testator and Maria moved to 301 Mill Road. They continued to reside there and the Testator maintained the farm as best he was able to and also maintained his rental properties. In 1992 Maria became married but continued to reside at a separate apartment at 301 Mill Road, North Haven with her husband. Although there were early indications that Maria and her husband would reside in New York, the Testator helped Maria's husband to obtain employment at Blakeslee's in New Haven so that both Maria and her husband could reside in North Haven. Maria and her husband continued to reside at 301 Mill Road until 1994 at which time they vacated to move to a new home. The Testator continued to reside at 301 Mill Road, North Haven until his death on May 7, 1995.
In summary the Testator spent most of his life including his entire adult life in the New Haven, Connecticut area. He was married to Edith Brudz from 1945 to 1988, a period of 43 years. He and his former wife raised three children. The Testator owned and managed four residential properties, renting at least two (if not three) of the said residential properties. The Testator owned and operated a 10 acre farm. The Testator owned and operated a profitable landscaping business. The Testator worked at Winchester as a machinist for no less than 30 years. The defendant conducted his affairs in a businesslike fashion and paid his bills on time.
A very important issue in this case is the personality of the Testator. Various witnesses have testified regarding the Testator's personality.
Wendy DeFrancesco, secretary of Attorney DePaola described the Testator's personality as follows:
a. "No nonsense man"
b. "Right to business" CT Page 12926
c. "Abrupt"
d. "Businesslike"
e. "A straightforward kind of guy".
Attorney DePaola described the Testator as:
a. "Strong willed"
b. "Direct"
c. "Forceful"
d. "Straight forward".
Attorney James Brennan described the Testator's personality as:
a. "strong-willed"
Eleanor Andrews an employee of the Accessor's Office in North Haven, described the Testator's personality as:
a. "strong-willed"
Robert Goddard a tenant and neighbor at 24 MacArthur Road described the Testator's personality as:
a. "strong-willed"
b. "not pushed around"
c. "not influenced by others"
d. "one to make up his own mind".
Judith Ghiroli the Testator's daughter described the Testator as:
a. "non-delusional"
b. "not depressed"
c. "one who managed his own affairs". CT Page 12927
Greg Ghiroli described the Testator as
a. "strong-willed".
Peter Brudz, Jr. described the Testator as:
a. "tough"
b. "thick"
c. "stubborn"
d. "strong-willed"
e. "independent"
f. "argumentive".
Vern Carlson described the Testator as:
a. "very sharp"
b. "fine mental condition"
c. "rational".
Philip Brudz described the Testator as:
a. "a good business man".
Maria Krawiec described the defendant as:
a. "a good mental condition"
b. "strong-willed"
c. "hard"
d. "stubborn"
e. "determined"
f. "went after what he wanted and did not let go".
Mary Gasorek described the Testator as: CT Page 12928
a. "a very good personality"
b. "laughing and joking"
c. "fun to talk to"
d. "not easily influenced"
e. "could not tell him anything"
f. "if he said no it was no"
g. "if he said yes it was yes"
h. "an exceptional memory".
The first issue for this court to determine is whether the Last Will and Testament was duly executed, specifically whether the witnesses to the execution of the Will subscribed the instrument in the presence of the Testator. The second issue to be determined by the court is whether the Testator had the testamentary capacity to execute his Last Will and Testament.
In Connecticut the proponents of a Will have the burden of proving the will, proving the validity of the Will and the further burden of proving due execution as well as testamentary capacity. The proponents of a Will must prevail only on the strength of their own case not the weakness of the contestants case. This language is paraphrased from Crane v. Manchester,143 Conn. 498 at 501 (1956). Therefore, the appellees in this case must carry the burden of proof that the Last Will and Testament was duly executed and that the Testator had the necessary testamentary capacity.
Connecticut General Statute 45a § 251, provides "a Will or Codicil shall not be valid to pass any property unless it is in writing, subscribed by the Testator and attested by two witnesses, each of them subscribing in the Testator's presence;. . ."
The procedure followed by Attorney DePaola in executing the Testator's Last Will and Testament was as follows: Attorney DePaola invited the Testator into his office, presented the Testator with the prepared Last Will and Testament, and placed it CT Page 12929 in front of the Testator for his review and reading. Attorney DePaola reviewed each paragraph of the Last Will and Testament with the Testator and reconfirmed the Testator's intention to disinherit his spouse and children and leave his property to Maria Krawiec and Mary Gasorek. Thereupon, Attorney DePaola called his two secretaries into his office and again Attorney DePaola went over the terms of the Last Will and Testament with the Testator in the presence of the two witnesses. Further the Testator approved the language of the Last Will and Testament especially that language disinheriting the Testator's children and spouse. Thereupon, the Testator signed each page of the Last Will and Testament in the left margin and further subscribed the Last Will and Testament at its end on page four thereof. Both witnesses witnessed the Testator signing and subscribing the Last Will and Testament and subscribed their names as witnesses to the signing of the Last Will and Testament by the Testator. In addition, the two witnesses signed a self-proving affidavit and Attorney DePaola took their acknowledgment.
This procedure is in conformity with Conn. General Statutes45a-251. This court finds that the said Last Will and Testament of the Testator, Peter J. Brudz, Sr. was duly excecuted signed and subscribed by the Testator and further subscribed by the two witnesses in the presence of each other and in the presence of the Testator.
The proponents of a will must also prove by the preponderance of the evidence that the Testator conforms to Connecticut General Statutes 45a-250. Conn. General Statutes 45a-250 provides: "any person 18 years of age or older and of sound mind, may dispose of his estate by will." The Testator was born on May 30, 1916 and therefore would have been 71 years of age at the time of the execution of the said Last Will and Testament and therefore over the age of 18 as prescribed by Connecticut General Statutes45a-250. However, an issue in this case is whether the Testator was of sound mind. This courts finds by a preponderance of the credible evidence that the Testator was of sound mind. Wendy DeFrancesco, whose testimony is credible, testified that the decedent was not irrational and new what he was doing, that is, the business at hand. She testified that the Testator was of sound mind and that he knew exactly what he wanted to do especially disinheriting his family and spouse. Furthermore, the Testator did not suffer from any mental conditions nor was ever treated for mental conditions. The Testator acknowledged in the presence of the two witnesses and Attorney DePaola that he CT Page 12930 understood the terms of this Last Will and Testament. The Testator also knew the extent of his estate, his children and his spouse. The Testator was well versed in business affairs. The Testator read, wrote and understood English.
The well-established test for testamentary capacity, i.e., that the Testator have mind and memory sound enough to know and understand the business upon which he was engaged at the time of the execution has been satisfied by a preponderance of the evidence. See Stanton v. Quigley, 177 Conn., 558 at 564 (1979).
This court concludes that the proponents have proven by a preponderance of the evidence that the Last Will and Testament of the Testator, Peter Brudz, Sr., dated October 2, 1987 was duly executed, signed and subscribed in conformity with Connecticut General Statutes 45a-251 and further that the Testator was more than 18 years of age and of sound mind in conformity with Connecticut General Statutes 45a-250.
The appellants in this case allege that the Testator Peter Brudz, Sr., was subject to and under the undue influence of either/or/and Mary Gasorek and Maria Fracz and Jenny Onacewicz.
The general rule in Connecticut is that those who attack a Will as the product of undue influence must assume the burden of proving that charge, but as is said in Lockwood v. Lockwood,80 Conn. 513, 522 "We have recognized one exception to the operation of this maxim in trials upon the probate of a will involving the affirmation of undue influence. In certain cases — where the natural object of the Testator's bounty is excluded from participation in his estate, where a stranger supplants children, and the will is in favor of the lawyer drawing and advising as to its provision, or the guardian having charge of his person and estate, or of the person occupying a clearly analogous position of trust — there is imposed upon the proponents of the will, upon the trial of the issue as thus raised, the obligation of disproving by a clear preponderance of evidence the affirmation of the actual exercise of undue influence by such beneficiary of the will. St. Leger's Appeal, 34 Conn. 434, 450; Dale'sAppeal, 57 Conn. 127, 143. This exception should not be extended beyond the limitations placed upon it in its recognition. Its justification is to be found in a rule of policy which seeks to prevent the unseemly sight of a stranger occupying such a delicate fiduciary relation advising a Testator to exclude his own family from participation in his estate for the benefit of CT Page 12931 the advisor. In Gager v. Mathewson, 93 Conn. 539, 543, we refer to two additional classes, religious advisers and physicians as within this class. "We there [in Lockwood v. Lockwood] recognize the existence of the exception, call attention to the rule of policy that justifies it, and say that the exception should not be extended beyond the limitation placed upon it in its recognition. The limitations referred to are such relations existing between the testatrix and the legatee as denote special confidence and controlling influence, such are shown where the legatee is the lawyer who draws the will and advises as to its provisions, or a guardian who has charge of the person and the estate of the testatrix, and in like cases of confidence and trust." Page v. Philips, 108 Conn. 572, 582.
This court finds that Mary Gasorek, named Testatrix and beneficiary under the Last Will and Testament of Peter Brudz, Sr. did not occupy a position of confidence and trust in relation to the Testator, but rather enjoyed a personal relation with the Testator. This court finds that Maria Krawiec, a beneficiary under the Last Will and Testament of Peter J. Brudz, Sr. did not occupy a position of confidence and trust in relation to the Testator, but rather enjoyed a personal relation with the Testator. Therefore, the appellants have the burden of proof to prove by a preponderance of the evidence that the Testator was under undue influence.
The test to be applied to the situation presented is set forth in Hills v. Hart, 88 Conn. 394: "If the will represented her wishes, and was such a disposition of her estate as she desired, and she was then of sound and disposing mind it is her will and not another's. She has not done something against her will and contrary to her wishes. Her discretion and judgment have not been controlled, and her free agency has not been overcome. This is our test." See also St. Leger's Appeal, 34 Conn. 434,442.
In Dennison's Appeal, 29 Conn. 399, 406 we said "The object of a will is to make a disposition of property different from what the law makes of it. And to say that it may be set aside for a cause like this [a disposition contrary to the statute of distribution] is little else then to allow it to be defeated because it is attempted by it to carry out the lawful purpose for which most wills are made."
The question presented to this court is whether this will CT Page 12932 represents the wishes of the Testator, Peter Brudz, Sr., and was it such a disposition of his estate as he desired?
The most common description of the Testator's personality was that he was "strong willed". This is demonstrated by the terms of his Last Will and Testament disinheriting his former spouse and children.
The reasons given for the divorce action between Edith Brudz and Peter Brudz Sr., include that Edith Brudz continued to smoke despite the fact that the Testator had asthma, did not properly take care of the Testator's mother, further that Edith Brudz did not pay attention to the Testator and that Edith Brudz was not cooking, helping out on the farm nor cleaning on behalf of the Testator and further that Edith Brudz was not happy with the Testator's relationship with Maria. Whether these are good reasons to institute a divorce from a wife of 42 years, is not for this court to decide, but rather this court concludes that it was at least sufficient reason to the Testator to institute a divorce proceeding. The court has previously found that the Testator was of sound mind and that the Testator being strong-willed obviously wished and desired to disinherit his spouse whom he was divorcing. This conclusion is obvious to this court.
The Testator also disinherited his children. Suggested reasons include that the children sided with Mrs. Brudz, were not helpful towards the Testator, there was a gross diminishment in social rapport and that the Testator was only invited to social events on a perfunctory basis limited to events such as baptisms and birthday parties. This court observes that the Christmas cards sent by the Testator's children to him were very much of a generic nature and that it appears to this court that they did not care enough for their father to go out and buy a special Christmas card or greeting card. The Testator became convinced in his own mind and judgment that he wished to disinherit his children. This he carried out which was consistent with his "strong-willed" personality.
In reviewing the evidence in this case, the appellants suggestion that the episode at the hospital in 1986 wherein Jenny Onacewicz suggested that it was the Testator's responsibility to take care of Maria certainly does not rise to the status of undue influence. CT Page 12933
As regards Mary Gasorek, the court finds that Mary Gasorek was a loving, caring and helpful sister and enjoyed a good relationship with her brother free of any discord or argument. Likewise, the Testator enjoyed a similar reciprocal relation with Mary Gasorek. In addition, Mary Gasorek was also helpful towards the decedent's mother in that on a at least a weekly basis she came to either 11 Cottontail Lane or 247 Concord Street to give the Testator's mother a bath. Mary Gasorek also cooked for the Testator and did his laundry on occasion. There is no credible evidence that Mary Gasorek exercised or attempted to exercise any undue influence on the Testator. In fact, the evidence shows that she purposely avoided any discussion regarding the Testator's testamentary intentions.
As regards Maria, this court finds that the Testator and Maria enjoyed a very close relationship. The Testator was very fond of Maria and Maria was very fond of the Testator. Maria came to this country when she was 14 years of age, almost 15, Maria was very respectful and obedient to the Testator. She was also respectful, obedient and helpful towards the Testator's mother, in that she cleaned, cooked and helped bathe the Testator's mother. Maria was also a very willing person who was helpful to the Testator in repairing and renovating the premises at 247 Concord Street and also helped the Testator at the farm in similar activities. Although Maria resided with the Testator at 11 Cottontail Lane or 247 Concord Street or at 301 Mill Road, she did not under any circumstances preclude friends or relatives of having access or visitation with the Testator. Simply stated, Maria was a very nice person and the Testator recognized this. It became his desire and wish to leave part of his estate to Maria and did so accordingly. Again, this demonstrates his "strong-willed" personality. This case is barren of any credible evidence that would lead this court to conclude by a preponderance of evidence either/or/and Mary Gasorek, Mary Fracz or Jenny Onacewicz subjected or exercised any undue influence on the Testator.
This court finds and concludes by a preponderance of the evidence that the Last Will and Testament of the Testator dated October 2, 1987 represented the wishes of the Testator and it was such a disposition of his estate as he desired. The appellants herein have failed to sustain their burden of proof to establish that undue influence was brought to bear on the Testator.
The last contention of the appellants herein is that the Last CT Page 12934 Will and Testament of the Testator was revoked. Connecticut General Statutes 45a-247(b) provides "A Will or Codicil shall not be revoked in any manner except by burning, canceling tearing or obliterating it by the Testator or by some person in his presence by his direction. . ."
The procedure wherein the Last Will and Testament of the Testator was signed, executed and subscribed concluded by Attorney DePaola retaining for safekeeping the ORIGINALLY signed Last Will and Testament and giving a copy thereof to the Testator for his reference. This court finds that there was only one Last Will and Testament executed and that the ORIGINALLY signed and executed Last Will and Testament was retained for safekeeping purposes by Attorney DePaola at the direct of the Testator. The original Last Will and Testament has been produced and submitted to the Probate Court for the District of North Haven. Therefore the same has not been revoked. There is no credible evidence that the Testator directed Attorney DePaola to tear up his Last Will and Testament. Attorney DePaola testified credibly that he did not receive any such instructions or telephone calls from the Testator and this court finds that the Testator did not make such calls or instructions to Attorney DePaola. Furthermore, any testimony suggesting that the Testator changed his mind after October 2, 1987 or changed his mind after May of 1988 (date of divorce), whether it be credible or not, does not in and of itself revoke a will. The Testator must make out a new Last Will and Testament in conformity with the applicable Connecticut General Statutes in order to put into full force and effect any change he may have in his testamentary intentions. This court finds that the Testator did not make out a new will and that the Last Will and Testament dated October 2, 1987 was not revoked and is still valid.
Therefore, the appeal of the appellants is dismissed, Further the Last Will and Testament of Peter Brudz, Sr. dated October 2, 1987 is legally valid and enforceable.
John W. Moran, Judge