ALLEN DENISON AND OTHERS : APPEAL FROM PROBATE.

29  399
74  261

A testator, whose only heirs at law were a brother and three sisters, gave by his will $15,000 to his brother and $1,500 to his brother's children, $100 to an unmarried sister with whom he lived, $300 to another sister, and of the residue of his estate three-fourths to his brother, and one-fourth to his three sisters. On the trial of an appeal by the sisters from the probate of the will, in which the appellants claimed that the testator was of unsound mind, and that undue influence had been used upon him by his brother, when enfeebled in mind, to procure the will, it was held that evidence of a declaration of the testator made a long time before he executed the will and before his mind was enfeebled, that none of his property should ever go to the family of his brother, was admissible.

The character and provisions of a will are a proper subject for the consideration of a jury in determining whether the testator was of sound mind when he made it.

APPEAL from a decree of probate approving the will of Stiles Park. The reasons of appeal assigned by the appellants were, 1st, that the testator was not of sound mind at the time the will was executed, and 2nd, that he had been induced to sign the will by fraud and undue influence used upon him, while enfeebled in mind, by one Ledyard Park, who was the principal legatee under the will. The appellees denied these allegations, and issue was closed upon them, and the case tried to the jury.

The testator at the time of his decease had one brother, Ledyard Park, above named, and three sisters, who were his only heirs at law. He lived in the family of his sister, Emily

Park, who was unmarried, and there died.  The appellants were the remaining sisters of the testator and their husbands.

By his will the testator gave to Ledyard Park $15,000—to the three sons of Ledyard $400 each—to his three daughters $100 each—to the testator's sister, Emily Park, $100—to his sister Mrs. Denison $300, and to her two children $5 each—and the residue of his estate, two-thirds to his brother Ledyard and the other one-third in equal shares to his brother Ledyard and his three sisters.

On the trial the appellants offered to prove by one Asher Chapman that, long before the testator executed the will, and before there was any pretence that his mind had become impaired or unsound, he had declared that none of his property should ever go into the family of Ledyard Park.  To this evidence the appellees objected.  The appellants claimed that the declaration, in connection with the dispositions of the will, was admissible as tending to show unsoundness of mind at the time the will was made, and that undue influence had been used in procuring the will; but the court rejected it.

The jury having returned a verdict for the appellees, the appellants moved for a new trial, for error in the exclusion of this evidence, and in certain instructions of the court to the jury, which are sufficiently stated in the opinion.

*L. F. Robinson* and *A. Park*, with whom was *Wait*, in support of the motion.

1. The declaration of the testator should have been admitted.  *Allen* v. *Public Administrator*, 1 Bradf., 378.  *Mowry* v. *Silber*, 2 id., 133.  *Wightman* v. *Stoddard*, 3 id., 393, 407. *O'Neil* v. *Murray*, 4 id., 311.  *Stewarts' Exr.* v. *Lispenard*, 26 Wend., 261, 312, 314.  *Crispell* v. *Dubois*, 4 Barb., 393. *Reel* v. *Reel*, 1 Hawks, 247.  *Rambler* v. *Tryon*, 7 Serg. & R., 90.  *Moritz* v. *Brough*, 16 id., 403.  *Norris* v. *Shepard*, 20 Penn., 477.  *Trumbull* v. *Gibbons*, 2 Zabr., 117.  *Couch* v. *Couch*, 7 Ala., 519.  *Roberts* v. *Trawick*, 17 id., 519. *Gibson* v. *Gibson*, 24 Misso., 227.  *Glover* v. *Hayden*, 4 Cush., 580.  *Jackson* v. *Kniffen*, 2 Johns., 31.  *Comstock* v.

*Hadlyme,* 8 Conn., 254. *Stevens* v. *Vancleve,* 4 Wash. C. C., 262. *Smith* v. *Fenner,* 1 Gall., 172. *Waterman* v. *Whitney,* 1 Kern., 157, 168. *Robinson* v. *Hutchinson,* 26 Verm., 38, 46. *Kenyon* v. *Ashbridge,* 35 Penn., 157. *Howell* v. *Barden,* 3 Dev., 442. *Doe* v. *Hardy,* 1 Moo. & Rob., 525. *Allen* v. *Allen,* 12 Ad. & El., *N. S.,* 451. *Shalcross* v. *Palmer,* 16 id., 747. *Ingrain* v. *Wyatt,* 1 Hagg. Eccl. R., 431. *Durling* v. *Loveland,* 2 Curteis' Eccl. R., 239. *Provis* v. *Reed,* 5 Bing., 435. *Baker* v. *Batt,* 2 Moore P. C. C., 317. *Ford* v. *Elliot,* 4 Exch., 78. Roscoe N. P., 17, 42, 660. Buller N. P., 173.

2. The court erred in instructing the jury that the inequality of the shares of the legatees under the will was not any evidence of unsoundness of mind. The will itself should have been considered by the jury, with all the other evidence, in determining whether the testator was of sound mind. It might have been entitled to but little weight, but was nevertheless evidence. Roscoe N. P., 660. Jarman on Wills, 82, 83, and note to 4th Am. Ed. *Stewarts' Executor* v. *Lispenard,* 26 Wend., 313. *Davis* v. *Calvert,* 5 Gill & Johns., 269, 301.

*Lippett* and *Halsey,* against the motion.

1. The declaration sought to be proved was properly excluded. It only tended to show that the testator had changed his mind and did not tend to prove unsoundness of mind or undue influence. It formed no part of the *res gestae.* In aid of a will, to show a lucid interval, previous declarations which comport with the dispositions made in the will have been allowed weight, but that is entirely distinguishable from the present case. The granting of a new trial is a matter of discretion, and the party moving for it must show conclusively by his motion that injustice was or might have been done on the trial. His motion will not be construed liberally in his favor. *Kelsey* v. *Hanmer,* 18 Conn., 311. *Brown* v. *Keach,* 24 id., 73. *Fitch* v. *Woodruff & Beach Iron Works,* 29 id., 82. The motion states that the declaration was made " long before," but does not state how long. It might have been

made twenty or forty years before, and have been excluded by the court on the very ground of its remoteness. *Thomas* v. *Thomas*, 6 T. R., 677. This court can not, on the motion, see that the judge below acted improperly in excluding the evidence, even though it might have been admissible in a certain state of facts.

2. The intrinsic evidence furnished by the will was properly submitted to the jury. The instruction that mere inequality, independent of other circumstances, would not be evidence of unsoundness of mind was correct. It would be of dangerous consequence if mere inequality in the division of the property among those in equal degree was to be regarded as evidence of unsoundness of mind. 1 Jarman on Wills, (4 Am. Ed.,) 67. *Greenwood* v. *Greenwood*, 3 Curteis' Eccl. R., appendix, 3. It is no objection to the validity of a will that its provisions are strange and unreasonable, so long as the testator is of sound mind, and keeps within the limits of the law. *Patterson* v. *Patterson*, 6 Serg. & R., 56. *Lee* v. *Lee*, 4 McCord, 183. *Austin* v. *Graham*, 29 Eng. L. & Eq., 38. *

HINMAN, J. We think the superior court erred in rejecting the evidence of the declaration made by the testator before the execution of his will, and before there was any claim that his mind had become impaired, that none of his property should ever go into the family of Ledyard Park. His will was directly contrary to what might have been expected if he was sincere in making the declaration, as appears by the will itself, which, in fact, disposes of the bulk of his whole estate to Ledyard Park and his children. The questions before the court were, whether, at the time the will was made, the testator was competent to make it, and whether by fraudulent practices, operating upon an impaired or enfeebled mind, he was induced to execute the instrument as his will, when in fact it was contrary to his well settled convictions of what was a just and proper disposition of his estate, in respect to the appellants and others standing in the same natural relation to him as his brother Ledyard, and to one of whom he seems to have been under some additional obligations. Dec-

larations and acts of kindness and affection towards a legatee are usual and common circumstances, often relied upon in aid of a will. They go to show that a legacy, otherwise inexplicable upon the ordinary motives of human conduct, is a natural and probable act, and therefore a reasonable and free one. Of course it would seem to follow that contrary declarations and acts must have a contrary effect. They tend to show both imposition and incompetency, because, where a will is made contrary to previously declared intentions, it is such an improbable and unexpected act as requires explanation before the mind is satisfied that it was deliberately and understandingly done. Such evidence may not always be very satisfactory, but we think it is admissible, and as little liable to be misapplied as any other, and sometimes may be very satisfactory and conclusive, especially when taken in connection with other circumstances. Should a testator dispose of his property to personal enemies, or entire strangers, to the exclusion of his intimate friends or relatives, it would strike the common sense of all men as an unnatural act, and would not be believed to be the free and voluntary act of a sound mind, without a full and clear explanation of it. If a will made in favor of the attorney or medical attendant of a testator, when drawn up by such attorney or attendant, requires explanation to remove the suspicion of imposition which otherwise attaches to it, it seems to us that a reason equally strong, though not of the same character precisely, throws at least as much suspicion upon a will in favor of a personal enemy, or of one whom the testator is shown to have had a settled determination to exclude from any participation in his property. Every unnatural act is some evidence of imbecility or insanity, as it is only by an accumulation of such acts that these conditions of the mind can be established. Standing alone it may be wholly inconclusive in its character; still, the court must receive it as evidence, or insanity could very seldom be established. Men are not expected to give their property to personal enemies, nor to make those of their connexions toward whom they entertain strong feelings of dislike the principal objects of their bounty, to the exclusion, either wholly or in

part, of those standing in the same relation, and toward whom they entertain feelings of attachment growing out of personal kindnesses. Hence nothing is more common than for judges, when commenting upon cases where near relatives have been passed by, and the property of a testator given to those unconnected with him by blood, especially if there was enmity between the testator and his relatives at all attributable to the faults of the survivors, to speak of them as "conspirators against themselves," and to remark that, under the state of feeling existing between them, no one would expect to find in the will of the deceased any provision for such survivors.

We suppose, therefore, that this evidence would have been received by the court, if the declaration offered to be proved had been made immediately, or but a short time, before the will was executed; but that, under the circumstances, it was considered that the proof related to declarations made at too remote a period to be entitled to any weight. Hence the motion states that they were made long before the deceased executed his will. That such declarations might be made at so remote a period as to be entitled to little if any weight, unless succeeded by other acts or declarations showing that the state of feeling that called them forth continued up to the time the will was executed, is undoubtedly true. And it is equally true that they might be made under such circumstances as to indicate no settled feelings of hostility, or any determination ever to act upon them. And perhaps, if sufficient circumstances appeared in the motion to show that they could not have altered the verdict had they been admitted, we might not now feel called upon to advise a new trial. But the mere circumstance that they are stated to have been made long before the will was executed, is, we think, wholly insufficient for that purpose. If very remote, especially if succeeded by kind feelings, the jury would have given the declaration no weight, and the court might very properly have so advised them. But if it had been succeeded by a long continued state of hostile feelings, not shown to have been changed up to the time the will was made, time would seem rather to have added to than to have lessened its force. Indeed, circum-

stances calculated to enhance or to·lessen or destroy the force
of such declarations, quite too numerous to be mentioned, will
occur to every intelligent mind.   When shown in evidence,
in cases as they arise, they would of course be proper for the
consideration of the jury, in weighing testimony such as was
offered and rejected in this case.   And, in our opinion, the
correct course would have been to admit the declaration made
by the testator, and let the jury weigh it in connection with the
length of time that had elapsed since it was made, and any
other circumstances, if any existed, calculated to strengthen or
weaken it.

But if it could be admitted that the length of time which
had elapsed since the declaration was made, might be suffi-
cient to authorize the court to reject the evidence, so as to
prevent its being heard by the jury, it appears to us quite
clear that no such length of time is shown to have elapsed in
this case.   The phrase " long before " is quite too indefinite
for the purpose.   To mean any thing, as applied to the sub-
ject, it would seem to call for a length of time sufficient to
allow the state of enmity which existed when the declaration
was made to subside and be succeeded by feelings of an oppo-
site character, and this would most probably depend on many
other circumstances besides mere lapse of time.   If the decla-
ration was but the expression of a sudden and slight impulse
of anger, a very short time might be sufficient to show that it
had subsided, and the provocation that called it forth been
forgotten.   But the court can not enter into an inquiry as to
the attending circumstances with a view of determining upon
the admissibility of the evidence.   This would be but one
mode of estimating its weight and importance under the cir-
cumstances, which is the province of the jury alone.   We
think therefore that on the ground of the exclusion of this evi-
dence there must be a new trial.

The judge, in charging the jury, stated to them that mere
inequality in the shares of the legatees standing in the same
natural relation to the testator, was not, of itself, any evidence
of unsoundness of mind or want of capacity to make a will.
We do not think this can be complained of under the circum-

stances. The expression, perhaps, is not technically correct, inasmuch as it may be evidence, and was in fact evidence in this case, which the judge at the time was commenting upon ; but it is clearly insufficient evidence of itself to authorize a court or jury to set aside a will. The object of a will is to make a disposition of property different from what the law makes of it. And to say that it may be set aside for a cause like this, is little else than to allow it to be defeated because it is attempted by it to carry out the lawful purpose for which most wills are made.

Nor can the appellants complain of the neglect of the judge to charge the jury that the will was void on the ground that the bequests in it were given upon conditions subversive of the christian religion. If the conditions were illegal they would be void, and the legatees would take the property free from any such restraints. We have no occasion therefore to examine the character of the conditions attempted to be imposed on the legatees under this will for the purpose of determining whether they are invalid or not. It is enough to say of them, therefore, that while they were of so unusual and extraordinary a character as to make it, at least, questionable whether they were not void as subversive of all religion, for, whether christian or pagan, its teachers seem by the testator to be placed on the same footing, it appears to us that the only legitimate use which the appellants could make of the conditions, is as evidence of unsoundness of mind arising from the provisions of the will itself.

Upon the whole case therefore we advise a new trial, on the ground only of the rejection of the testimony offered to be proved by the witness Chapman.

In this opinion the other judges concurred.

New trial advised.