## JOHN T. PHELAN *vs.* THE CITY OF WATERBURY.

Third Judicial District, Bridgeport, October Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The plaintiff sought to recover damages for injuries to his premises caused by surface water in times of heavy rain, upon three grounds: first, because of a change of grade in an adjacent street made by, or with the permission of, the defendant city; second, because the city had negligently caused larger quantities of surface water to flow into a catch-basin and sewer in one of its streets than they were planned for and capable of carrying off; and third, that the city had neglected to keep the catch-basins of this sewer clean and free from rubbish, in consequence of which the surface water upon this and other connecting streets could not flow through the basins and sewer but was turned upon the plaintiff's premises. The trial judge in his charge to the jury withdrew from their consideration the first and second grounds of action; the plaintiff had a verdict upon the third ground, which the trial court refused to set aside, and from this refusal the defendant appealed. *Held:*—

1. That the evidence offered by the plaintiff clearly indicated that the cause of the overflow and injury to his premises was the inadequacy of the sewer and catch-basins in the street in question, and that the result in times of heavy rain was the same, whatever the condition of the catch-basins might have been as to cleanliness and freedom from rubbish, as the plaintiff practically admitted in his own testimony; and that inasmuch as there was thus no reasonable basis for the verdict upon this ground, the trial court should have set it aside as requested by the defendant.

2. That upon a new trial the question of the city's liability upon the first and second grounds would come up afresh, unaffected by the ruling of the trial court in the present case.

Unless there was some evidence upon which the jury might reasonably have reached their conclusion, their verdict should be set aside.

Argued October 25th—decided December 23d, 1921.

ACTION to recover damages caused by surface water negligently allowed by the defendant to overflow into the plaintiff's building, brought to the Superior Court in New Haven County and tried to the jury before *Greene, J.;* verdict for the plaintiff for $1,833, which

the court refused to set aside, and from the judgment thereon the defendant appealed. *Error and new trial ordered.*

*Lawrence L. Lewis* and *Philip N. Bernstein,* for the appellant (defendant).

*Charles S. Hamilton,* for the appellee (plaintiff).

BURPEE, J. In his complaint the plaintiff set up three grounds of action: first, the flooding of his building by surface water caused by a change of grade made in an adjacent street by or with the permission of the defendant; second, negligently causing larger quantities of surface water to flow into a catch-basin and sewer in one of its streets called Bridge Street, than they were originally planned for and adequate to carry off; and third, that the defendant has neglected to keep the catch-basins of this sewer "clean and free from being clogged up and filled with rubbish," so that the surface water upon this street "and many streets connecting therewith," could not flow through the catch-basins but has been turned upon the plaintiff's premises. It was set up, also, that the plaintiff had from time to time notified the defendant of these facts and of his resulting damages, but the defendant had neglected and refused to do anything to remedy the conditions or pay for his losses. These allegations the defendant denied.

During the trial the plaintiff introduced evidence tending to maintain each of the grounds of action, but he did not claim that the defendant had in any respect acted wantonly, without necessity or negligently in making the change of grade, or in designing or constructing the sewer and catch-basins in Bridge Street. In its charge the court withdrew the first and second

grounds of action from the consideration of the jury, and, in effect, instructed them to find their verdict on the third only, and submitted this interrogatory to them: "If you find a plaintiff's verdict, say whether you find that the injury to the plaintiff's building was caused by the negligent failure of the city to keep the catch-basins and inlets in Bridge Street reasonably clean and open." With their verdict for the plaintiff, they returned this interrogatory signed "Yes" by their foreman. The court denied the defendant's motion to set aside this verdict because it was against the law and the evidence. This denial is assigned as the principal reason of this appeal.

In the exercise of its legal discretion, the trial court should have set aside this verdict if it was not apparent that there was some evidence upon which the jury might reasonably have reached their conclusion; *Burr* v. *Harty*, 75 Conn. 127, 129, 52 Atl. 724; or if it was not a conclusion to which the jury, acting fairly and intelligently, could reasonably have come. *Steinert* v. *Whitcomb*, 84 Conn. 262, 263, 79 Atl. 675.

During the trial much evidence was put before the jury to show that some years after the sewer in Bridge Street had been finished, the defendant had built and opened on higher ground new streets connecting with Bridge Street, and had made or permitted a change of grade in another street on which the plaintiff's building fronted; and that the surface water which ran down these new streets and was turned by this change of grade into the catch-basins and sewer on Bridge Street was much larger in quantity than they had been designed and made sufficient to carry off, so that they were clogged up in every considerable storm, and the water and the rubbish it carried with it were thus diverted into the plaintiff's building. These were admitted to be the facts, and it remained for the plaintiff

to prove by a fair preponderance of the evidence that the resulting injury to him was caused by the defendant's negligent failure to keep the catch-basins reasonably clean and open. For that purpose the plaintiff testified that when there were storms, the water came down "with such terrific force" that the catch-basin was "clogged up before the storm was quarter over, and then it had no place to run only down" certain streets into his cellar; that about the filling up of those catch-basins he had observed that when the storms came, the water washed the dirt down into the catch-basins and consequently it had no place to go only into his cellar; that the water filled up the catch-basins, and what did not go into the catch-basin went into his cellar; that at first only "extra storms" caused trouble, but recently an ordinary storm would do it, and the flow of water had trebled in the last six or seven years; that there were such storms three to five times a year; that there had been no trouble before the new streets were opened; and that if there were twice as many catch-basins, they would do no good in storms. About the defendant's alleged neglect to keep the catch-basins reasonably clean and open, the plaintiff testified that the defendant cleaned them out after storms, but not before, and in his opinion not after every storm, but only every three months; that he had seen men cleaning them out "rather frequently," and it might be three or four months at a time before the city's men came around to clean out the basins; that he had never called for men to come and clean them out, but his tenants had, and the city had always done so. On the same subject, one of the plaintiff's witnesses testified that after every rain, when the catch-basins filled up, the defendant's men cleaned them out; others testified that they had often seen men cleaning out the basins, but could not remember how often, or whether it was after

every rain.   The plaintiff offered no evidence about the condition of the catch-basins or sewers before any rainfall, or to show that they were clogged up between storms or at any time except during storms, or that they needed cleaning except after storms.

On the other side, the defendant introduced evidence to show that the regulations of its street department required that all catch-basins in the city be examined after every storm, and witnesses who testified that these regulations had been constantly enforced, and that during many years they, or men under their supervision, had examined the catch-basin near the plaintiff's property at least once a week and cleaned it out after every storm.

No attempt was made to question the credibility of any witness.

From this evidence the jury might fairly have reached the conclusion that the injury to the plaintiff's building was caused by inadequate or defective provisions for taking care of the increased flow of surface water occasioned by the change of grade and the opening of the new streets.   Indeed, the plaintiff's damage having been proved, the evidence was well calculated to lead the jury to the conclusion that the defendant was responsible for the damage; and it seems probable that they were misled, in spite of the instructions of the court, to apply this conclusion to the only question submitted to them, and to follow it to the further conclusion that that responsibility was fixed upon the defendant because of its negligent failure to keep certain designated catch-basins free and open.   But the second conclusion was not a logical consequence of the first. It should have been based upon independent evidence that the city failed in the other particulars specified. We think there was no evidence to prove such a failure. It does not appear that these catch-basins were clogged

up or needed cleaning before any rainfall, or that they were not cleaned whenever they were clogged up or needed cleaning. It does not appear that the city failed to give them sufficient attention when they should have had attention. It is evident that these catch-basins were filled up during the storms, not before, and that the overflows followed at once. Manifestly, after a storm had come and the overflow occurred, there was no opportunity to clean the basins until the damage had been done. Moreover, if they were clean immediately before each storm, the damage would not have been prevented, because, as the plaintiff testified, they became filled up and the water began to overflow into his cellar before the storm was over; that is, they were clogged up by the water and rubbish that came with the storm, which the defendant had no time to remove. The immediate cause of the plaintiff's injury was this overflow of surface water, and that happened, not because of failure to take reasonable care of these catch-basins, but because the drainage system was not sufficient to dispose of the surface water. In fact, the plaintiff himself testified that these overflows were occasioned by the greatly increased quantity of surface water in recent years, and that more than twice as many catch-basins would be needed to prevent them, and that the trouble was caused by the failure to provide more catch-basins. This is also indicated by the fact that the plaintiff did not at any time give notice to the defendant that his losses had been caused by any neglect to keep the basins clean, and it appears that his complaints were such that they directed the attention of the city officials only to the damage caused by the inadequate storm-water sewer near his property. The plaintiff testified that he began to have trouble from overflowing surface water in 1890, and that the sewer and catch-basins were built in Bridge Street in

Phelan *v.* Waterbury.

1895, and that the overflow has increased since the change of grade in 1904 and the opening of the new streets afterward.    Manifestly, the catch-basins were not the cause of the overflow in the beginning, or of the continuance and increase of the overflow since they were placed in the street.    It may be that they were not sufficient to remove the cause, but the failure, if there were any, to keep them clean and open was not the proximate cause of the plaintiff's injury.

In our opinion, the plaintiff failed to establish facts which afforded a logical basis for the inferences drawn by the jury.    The manner and appearance of witnesses and the weight to be given to their testimony are not involved in this decision.    Taking all the testimony at its face value and giving it its appropriate weight, it appears plain that the jury made a mistake in the application of legal principles to the bearing of the testimony upon the single question they were called on to decide.    Therefore their verdict should have been set aside.

This determination makes it unnecessary to consider other assignments of error in the appeal.    We assume that the first and second grounds of action will be disposed of upon the new trial without prejudice because of the adverse ruling in the charge of the trial court.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.