DOROTHY MANNING MARONCELLI *vs.* JOHN A. STARKWEATHER ET AL., EXECUTORS.

First Judicial District, Hartford, March Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

In passing upon a motion to set aside a verdict, the trial judge exercises a legal discretion, and his action will not be disturbed on appeal unless it clearly appears that such discretion was abused.

One obviously immovable limitation upon the exercise of this discretion is the constitutional right of trial by jury, which, in a proper case, includes the right to have issues of fact, as to which fair-minded men may reasonably differ, passed upon by the jury and not by the court.

Where the validity of a will is attacked on the ground of testamentary incapacity, the question to be determined is whether, at the time of its execution, the mind and memory of the testator were sound enough to enable him to know and understand the business in which he was engaged.

Physical weakness or disease, old age, eccentricities, blunted perceptions, weakening judgment, and failing memory or mind are not necessarily inconsistent with the existence of testamentary capacity.

When witnesses offer mere expressions of opinion that a testator was abnormal or of unsound mind and do not fortify their con-

clusions with revelant details concerning his conduct and behavior, their testimony is robbed of its persuasive force.

The fact that a will is unjust or unreasonable in that it disregards to a great extent the natural objects of the testator's bounty has a tendency to prove that it was the result of undue influence or of testamentary incapacity; but if it appears that the instrument represented his wishes and disposed of his property as he desired, and that he was of sound mind, then it is his will and not another's, and neither the unfairness nor the unwisdom of its provisions is a sufficient justification for either court or jury to revise its terms to accord with what appears to them to be their better judgment.

In the present case, the testatrix died possessed of an estate of $20,000, of which she bequeathed $5,000 to her daughter, her only living child, and the remainder to her brother. The daughter claimed that her mother lacked testamentary capacity, but, beyond the inferences to be drawn from the unnatural provisions of the will and from the fact that, at the time of its execution, her mother's physical health was greatly impaired, she offered no evidence upon this issue except the mere opinions of several witnesses that the testatrix was of abnormal or unsound mind. To counterbalance this, the proponents of the will offered abundant testimony that the testatrix was in the full possession of her mental faculties, that her relations with her daughter were unpleasant, that she capably conducted several business transactions involving the transfer of her real estate, and that her conduct, behavior and correspondence were those of a sane and normal woman. The daughter likewise claimed that her mother executed the will under the undue influence of her brother, the chief beneficiary, but, upon this issue, her proof consisted again of inferences to be drawn from the will itself and from the fact that for a few months prior to the death of the testatrix, the brother had lived with her under circumstances affording him an opportunity to control her judgment; whereas the proponents offered evidence that the testatrix was grateful to her brother for his care of her during sickness, that a large share of her estate consisted of a bequest made to her by an intimate friend of her brother's, and that before she took up her residence with her brother and at a time when she had not seen him for more than a year, she had drawn a tentative will, and had made certain declarations to a distant relative, in which she declared the same intentions with respect to the disposition of her property, which she subsequently expressed in her will. The jury returned a verdict that the will was invalid, which the trial court set aside as against the evidence. *Held* that the trial court did not err.

Argued March 4th—decided May 7th, 1926.

APPEAL by the plaintiff from an order of the Court of Probate for the district of East Hartford approving and admitting to probate a certain instrument as the last will and testament of Elizabeth S. Manning, late of East Hartford, deceased, taken to the Superior Court in Hartford County and tried to the jury before *Simpson, J.;* verdict for the plaintiff which the trial court, upon the defendants' motion, set aside as against the evidence, and from this decision the plaintiff appealed. *No error.*

*Samuel Rosenthal* and *George Schwolsky,* for the appellant (plaintiff).

*Josiah H. Peck* and *Frederick H. Waterhouse,* for the appellees (defendants).

CURTIS, J.   Upon the trial of the appeal from probate, the appellant relied upon these reasons of appeal:

"The deceased did not have testamentary capacity when she executed the instrument."

"The deceased did not execute the instrument freely but was unduly influenced."

The jury found the issues for the appellant, and upon the defendant's motion the trial court set aside the verdict and ordered a new trial.

Upon the plaintiff's appeal she sets forth the claimed errors of the trial court as follows:   "The court erred in its decision and judgment in setting aside the verdict returned by the jury in the above entitled cause on the grounds that the verdict was manifestly against the weight of the testimony as to undue influence, and because the jury could not have reasonably found that the testatrix was not of sound mind and memory."

We are required to review the evidence in the case and determine whether the trial court abused the legal discretion vested in it when it set aside the verdict. Under what conditions can a trial court exercise its legal discretion and set aside a verdict? In *Schulte, Inc.* v. *Hewitt Grocery Co.*, 101 Conn. 750, 751, 125 Atl. 365, we state the conditions as follows: "In setting aside a verdict, the trial judge is acting in the exercise of a legal discretion, and his action will not be disturbed by us unless it clearly appears that the discretion was abused; and in passing upon the question of abuse, great weight should be given to his opinion, and every assumption made in favor of its correctness."

In *Cables* v. *Bristol Water Co.*, 86 Conn. 223, 224, 84 Atl. 928, we say, in this connection: "The supervision which a presiding judge has over a verdict . . . is an essential part of the jury system. . . . This judicial supervision involves the exercise of a legal discretion, and action by the court in its exercise will not be reviewed by this court unless it clearly appears that that discretion has been abused."

The limitations surrounding the exercise of this discretion have been pointed out by us in *Robinson* v. *Backes,* 91 Conn. 457, 460, 99 Atl. 1057. We there say: "One obviously immovable limitation on the legal discretion of the court in such cases is the constitutional right of trial by jury, which in a proper case includes the right to have issues of fact, as to the determination of which there is room for a reasonable difference of opinion among fair-minded men, passed upon by the jury and not by the court. The question here is whether there was room for a reasonable difference of opinion in respect to the issue. . . . If so, the trial court erred in setting aside the verdict."

In *Phelan* v. *Waterbury,* 97 Conn. 85, 87, 115 Atl.

630, we say: "In the exercise of its legal discretion, the trial court should have set aside this verdict if it was not apparent that there was some evidence upon which the jury might reasonably have reached their conclusion; . . . or if it was not a conclusion to which the jury, acting fairly and intelligently, could reasonably have come."

From this brief survey of our law as to the exercise of the legal discretion of a trial court in setting aside a verdict, such action should be upheld unless it appears that under the evidence the conclusion of the jury could be reasonably arrived at by fair and intelligent men acting reasonably.

Reference was made by the court in its memorandum setting aside the verdict, to what it deemed to have been an improper appeal to the jury by counsel for the appellant. No exception was taken by the appellee to this argument. The argument used does not appear in the record, and hence is not before us for consideration. No reasons of appeal relate to the charge to the jury, and hence the charge does not appear in the record. We must assume that the charge was a correct presentation of the case to the jury.

We will consider first whether the jury could reasonably have found that the testatrix did not have testamentary capacity at the date of the execution of this will, December 4th, 1924. There were a number of witnesses who testified that in their opinion she was of abnormal or unsound mind before the claimed will was executed. The jury must be deemed to have believed that these witnesses stated their true opinion. In this case there was no claim that the evidence offered by the appellant tended to prove that the testatrix was insane or had delusions. The evidence offered by the appellant tended to prove that the testatrix had endured a severe shock to her entire system

about twenty-eight years ago, when her husband abandoned her, and that in recent years, 1918-1924, she had suffered three severe illnesses and that on the date of the execution of the will she was seriously ill and in a weak and diseased condition of body.

The testimony of witnesses of the appellant that the testatrix before the execution of this will was abnormal or unsound in mind is singularly lacking in any details of conduct or behavior on her part indicating an abnormal or unsound mind. In a contest over the validity of a will where testamentary capacity is in issue, the question to be determined by the jury is whether at the time the testatrix executed the paper purporting to be her will, her mind and memory were sound enough to enable her to know and understand the business in which she was engaged when she executed the paper. *Sturdevant's Appeal,* 71 Conn. 392, 42 Atl. 70; *Dripps* v. *Meader,* 94 Conn. 559, 109 Atl. 808; 40 Cyc. p. 1009.

When witnesses testify that she was abnormal or in their opinion of unsound mind, such testimony gets probative strength for the most part from the subordinate facts detailed by them from which their opinion or conclusion has been drawn. An eminent English judge said, in *Cartwright* v. *Cartwright,* 1 Phillim. 90, 102, a will case, that "the court does not depend upon the opinions of witnesses, but on the facts to which they depose."

In this case the absence of substantially any details of behavior or conduct of the testatrix which tends reasonably or logically to support a conclusion of abnormality or unsoundness of mind robs such testimony of persuasive force.

We said in *Dripps* v. *Meader,* 94 Conn. 559, 560, 109 Atl. 808: "Mere physical weakness or disease, old age, eccentricities, blunted perceptions, weakening judg-

ment, failing memory or mind, are not necessarily inconsistent with testamentary capacity." The appellant's evidence in this case falls short of tending to prove such facts as to this testatrix as therein recited.

There was evidence tending to prove that in April, 1923, the testatrix received as devisee and legatee under the will of a Mr. Barnes, a considerable property, which in addition to a small property that she then possessed of her own, made up an estate at her death of about $20,000; that of the property so received under the Barnes will, there was a house on 125th Street, New York City; that the question of whether to dispose of this house or retain it was a matter which she had to determine and did determine in 1924; and there is no suggestion that she did not act reasonably in her decision to dispose of this house or in the business of disposing of it, and furthermore, she determined to buy and did buy a home in Connecticut in the fall of 1924, and there were business questions which she was called upon to decide and perform in this matter, and there is no suggestion that in executing this business she did not act reasonably in all particulars. The testimony of the witnesses to the execution of her will of December 4th, presents a portrayal of a woman acting sanely and normally in the performance of this business, and in the execution of the will before the local judge of probate, who is a lawyer by profession. Furthermore, there were introduced in evidence numerous letters written by the testatrix during 1923 and 1924, all of which tend to prove a normal and sound condition of mind. In addition, there were numerous witnesses who testified that in their opinion she was of sound mind.

Under the evidence the jury could not reasonably

have found that the testatrix did not have testamentary capacity.

The appellant claimed that the jury could reasonably have found that she executed the purported will under undue influence exerted by her brother, John A. Starkweather, for his own benefit. This claim involves the finding that the will in question did not express her intent and purpose, but expressed the purpose of her brother, forced upon her by undue influence. The case is barren of evidence tending to prove that the brother directly exerted influence upon her. The claim rests upon inferences, which it is claimed should be drawn from the terms of the will and from the fact that the brother had during the fall and winter of 1924, an opportunity to influence her in her weakened condition of body and mind to favor him in the will to the detriment of her only living child, the appellant.

The fact that a testatrix executes a will which in its terms is unjust or unreasonable in disregarding to a great extent the natural object of her bounty and favoring another, is relevant evidence tending to prove that the testatrix did so when acting under undue influence imposed by the other, and is also evidence tending to show that she lacked testamentary capacity. *Crandall's Appeal,* 63 Conn. 365, 28 Atl. 531; *Denison's Appeal,* 29 Conn. 399, 1 Swift's Digest, p. 140; 1 Schouler on Wills (5th Ed.) §§ 77, 165; 40 Corpus Juris, p. 1032.

The testatrix had a daughter, the appellant, when she executed this will. The daughter was the natural object of her bounty; she had also two brothers, who were natural objects for remembrance. She bequeathed out of her property of about $20,000, $5,000 to her daughter, and gave the remainder, about $15,-000, to one brother. This was an unnatural disposition of her property, and unless the evidence disclosed

that beyond question it was her intention to so dispose of her property, it was one of the circumstances from which the jury might reasonably have held that she so acted because unduly influenced.

A survey of the evidence discloses that there were unpleasant differences of opinion between the mother and daughter.

The testatrix received the greater part of her estate under the will of a Mr. Barnes, in April, 1923, while her brother, John Starkweather, was living in the same house on 125th Street, New York City. This brother and his wife had been living with the testatrix several years and he left New York City on May 3d, 1923, and went to live at East Hartford, Connecticut. He did not see the testatrix again until one Sunday in August or September, 1924, when she came to East Hartford to look for a house for her own use. He was in New York City in October, 1924, and saw his sister. He found a house in East Hartford which she later purchased for her own use, and he brought her to East Hartford from New York City, November 15th, 1924. Thereafter she completed the purchase of the house, and lived in it until she died. Her brother lived in it with her. She was then seriously ill, had a doctor and a nurse attending her, and her brother assisted in caring for her. The verdict of the jury that the brother secured the execution of the will by the exercise of undue influence could not reasonably have been found by them except by inference based largely upon the terms of the will, which gave her child one fourth of her estate, and gave her brother three fourths.

These were not provisions which disinherited a daughter in favor of a stranger. There was evidence tending to show that the testatrix felt grateful to her brother for care of her in illnesses, some of which pre-

dated her acquisition of property under the Barnes will.

The test to be applied to the situation presented is set forth in *Hills* v. *Hart,* 88 Conn. 394, 401, 91 Atl. 257: "If the will represented her wishes, and was such a disposition of her estate as she desired, and she was then of sound and disposing mind, it is her will and not another's. She has not done something against her will and contrary to her wishes. Her discretion and judgment have not been controlled, and her free agency has not been overcome. This is our test." See also *St. Ledger's Appeal,* 34 Conn. 434, 442.

In *Denison's Appeal,* 29 Conn. 399, 406, we said: "The object of a will is to make a disposition of property different from what the law makes of it. And to say that it may be set aside for a cause like this [a disposition contrary to the statute of distribution] is little else than to allow it to be defeated because it is attempted by it to carry out the lawful purpose for which most wills are made."

Did this will represent the wishes of the testatrix and was it such a disposition of her estate as she desired? On July 23d, 1924, when Mrs. Manning had not seen her brother for over a year, she undertook, in New York City, to make a will, and in an instrument written by herself she made practically the same disposition of her estate as in the instrument in question. When the instrument of July 23d, 1924, was drawn, her brother was in East Hartford. The fact of the identity of the provisions of the instrument drawn by the testatrix on July 23d, 1924, and the instrument drawn by her on December 4th, 1924, render it impossible for the jury to have reasonably found that the instrument of December 4th did not represent the wishes of the testatrix and was not such a disposition of her estate

as she desired, unless the surrounding circumstances so disclose.

Supplementing the foregoing convincing evidence of her intent is the following testimony of a woman, a connection by marriage of Mrs. Manning, who was very intimate with her: "Q. Did Mrs. Manning ever say anything to you about Mr. Starkweather in connection with Mr. Barnes' death and Mr. Barnes' property? A. . . . The first day that Aunt Lizzie [testatrix] ever told me about the property being left to her, she said 'I am sorry Mr. Barnes did not leave something to my brother and his wife for he was very devoted to them.' Then another time after . . . that . . . in September, 1924, . . . she said 'I have made a will; I have left what I have to Dorothy and my brother John,' she said, 'I have never given my brother John and his wife a thing for all they have done for me,' and I said, 'You don't mean that literally?' She said, 'Yes, I do.' I said, 'Not a gift?' She said 'Not a thing.' She said, 'I have left the house to my brother John; I think that would please Mr. Barnes; and I have made him executor.' " (The sale of this house produced the substantial part of her estate.)

It is apparent, therefore, under the evidence presented, that this instrument expressed the deliberate intent of the testatrix, and although we may deem such intent unnatural or unwise, the law gave this testatrix, assuming that she was of testamentary capacity, the right to make such a will as expressed her intent.

In the light of the foregoing facts and testimony, the jury could not reasonably have found that the instrument of December 4th, 1924, did not represent Mrs. Manning's wishes, and was not such a disposition of her estate as she desired, and that she had done

something against her will and contrary to her wishes in executing it.

When a testatrix has testamentary capacity, neither the right of trial by jury, nor the law, gives to a jury or a court authority to revise her disposition of her property by will, because the jury or court is of the opinion that it could exercise better judgment in making the will than it thinks she exercised. To change the disposition of property provided for in a will, by providing for its disposition in accord with the terms of the statute of distribution of intestate property, can only be done in accord with the principles of law stated at the outset of this opinion.

The trial judge did not abuse the legal discretion residing in him in setting aside the verdict and ordering a new trial.

There is no error.

In this opinion the other judges concurred.