MARGARET I. ATCHISON ET AL. *v.* LAWRENCE L. LEWIS, EXECUTOR (WILL OF LAWRENCE J. ATCHISON).

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued June 7—decided July 20, 1944.

*Michael V. Blansfield* and *Harry M. Albert,* for the appellants (plaintiffs).

*John H. Cassidy,* for the appellee (defendant).

DICKENSON, J. This appeal from the admission to probate of the will of Lawrence J. Atchison, taken by two of his children, Margaret and Alden, was upon the ground that the testator did not have testamentary capacity, that he was suffering from insane delusions and that his will was the result of undue influence exercised by his brother, Edwin C. Atchison, and the brother's wife and son. The jury, as appears by answers to interrogatories, found the issues of testamentary capacity and undue influence in favor of the plaintiffs and rendered a verdict for them which the trial court, on the defendant's motion, set aside as contrary to the law and the evidence and the result of sympathy and prejudice. The plaintiffs appeal from this ruling.

The action of the trial court in setting aside the verdict should be upheld unless it appears that under the evidence the conclusion of the jury, either as to testamentary incapacity or undue influence, could be reasonably reached by fair and intelligent men acting reasonably. *Maroncelli* v. *Starkweather,* 104 Conn. 419, 423, 133 Atl. 209; *Caldwell* v. *Danforth,* 124 Conn. 468, 469, 200 Atl. 577; *Knight Realty Co., Inc.* v. *Caserta,* 126 Conn. 162, 10 Atl. (2d) 597; *Schulte, Inc.* v. *Hewitt Grocery Co.,* 101 Conn. 750, 751, 125 Atl. 365. The test of testamentary capacity stated in its simplest terms is that the testator must have mind and memory sound enough to enable him to know and understand the business upon which he is engaged, that

is, the execution of his will at the very time he executes it. *Maroncelli* v. *Starkweather, supra,* 424; *Jackson* v. *Waller,* 126 Conn. 294, 301, 10 Atl. (2d) 763; *Kimberly's Appeal,* 68 Conn. 428, 439, 36 Atl. 847.

The jury could have found these facts: The testator was married in 1920. Three children were born —Lawrence in 1922, Margaret in 1926 and Alden in 1933. Lawrence, from the time he was six months old, was brought up by and made his home with his grandparents. The testator and his wife separated in 1933, and thereafter the other two children made their home with her. About 1935, the testator brought an action for divorce against his wife on the ground of intolerable cruelty, and she filed a cross-complaint for desertion. A decree was granted her in April, 1938, with an order for the support of the children. Her efforts thereafter to secure payments under the order were a cause of rather bitter disagreements with the testator. He had little contact with Alden. He continued on friendly terms with Margaret; she visited him at quite frequent intervals and he took her to the movies and the like. About 1922, he had a serious operation, and thereafter there was a great change in his disposition. He had repeated attacks of stomach trouble and was subject to a great deal of pain, to alleviate which he took drugs or medicines; he was often morose, irritable and despondent, and wanted to sleep a great deal of the time. He would easily become angry and fly into violent rages; these he sometimes vented on his domestic animals by beating or kicking them when there was very little provocation. The testator did not work steadily because of his illnesses and had little property during his married life. From 1933 on, after his father's death, he worked the farm for his mother. She died in 1939 leaving him a considerable property.

The value of his estate was between $28,000 and $29,-000.

The testator made two wills previous to the one involved in this action. In the first, dated August 19, 1939, he gave $100 to his son Lawrence, stating that the reason for the amount of the bequest was because Lawrence had not lived in his household since his infancy but had resided with his maternal grandparents; he gave the same sum to his son Alden, giving as a reason for a gift in that amount that Alden was not a member of his immediate household but was living separate and apart from him in the care and custody of his mother; he gave $1000 in trust to be used for the education of Margaret; and the residue of his property he gave to his brother, Edwin C. Atchison. The second will, dated January 25, 1941, contained the same provisions except that the amount given in trust for Margaret was increased to $5000 and the purpose of the trust was stated to be for her support instead of for her education. The will involved in the present action was made on July 17, 1942. In it the gifts of $100 to the testator's sons Lawrence and Alden are retained and the reasons given in the same phraseology as in the earlier wills, but in place of the trust gift for Margaret she is given outright the sum of $100; a gift of $500 was made to George K. Cashman, the will stating that this was because of the testator's friendship for him and in part payment for numerous and valuable services rendered the testator during his lifetime; and the residue of the estate was given to the brother Edwin. Shortly before the execution of the last will, there had been a serious and somewhat violent altercation in which the testator, Lawrence, Lawrence's wife, Margaret and her mother were involved. Shortly after making the last will, the testator was

taken ill and moved to a hospital, and he died the following September.

There was no evidence whatsoever which would afford a basis for even an inference of any exercise of undue influence by Edwin C. Atchison and his wife and son, nor any which would support a conclusion that the testator suffered from insane delusions. The only direct evidence that the testator was of unsound mind were the opinions to that effect expressed by his divorced wife, his son Lawrence and his daughter Margaret. Even if standing alone, these opinions could have little weight when tested by the facts given in evidence by these witnesses as a basis for their conclusions. *Maroncelli* v. *Starkweather*, supra, 424. On the other hand, all of the five doctors who testified, four of whom were called by the plaintiffs and all of whom attended the testator between the time when he made his last will and his death, testified that he was of sound mind. So did the attorney who drew the last will and the attorney who attended to its execution. Numerous other witnesses gave evidence to the same effect; several of these had no apparent reason to do otherwise than testify truthfully; and some of them had had business dealings with the testator in the last months of his life. Some of these witnesses testified that the testator felt that Margaret had not treated him as she should have and that at the time of the altercation just before the making of the last will she had sided against him, and that this had hurt him deeply. The lawyer who drew the will testified that the reason for the testator's reducing the gift to her was her attitude at this altercation, and that, although the lawyer advised that the testator think the matter over and he did not remake his will for some days thereafter, he still persisted in that feeling.

The evidence was overwhelmingly against the con-

clusion expressed in the verdict. That the jury was moved by considerations other than the calm evaluation of the evidence is clear from the fact that, with no support whatsoever in the record, they nevertheless by their answer to an interrogatory found that the will was the result of undue influence exercised by Edwin C. Atchison, his wife and son. Although the claim that the testator was suffering from insane delusions is made in the reasons of appeal, it was not included in the interrogatories submitted to the jury and is only mentioned in passing in plaintiffs' brief; yet in the argument of plaintiffs' counsel, made a part of the record by order of the trial court, it was strenuously urged upon the jury that the testator was laboring under such delusions, and with that argument went a strong appeal to their sympathies on behalf of the testator's children, including the suggestion that, if the will stood, they might "go on the poor list" of the town. The situation before us falls within the principle stated in *Horvath* v. *Tontini*, 126 Conn. 462, 464, 11 Atl. (2d) 846: "Cases sometimes occur, however, in which it is so manifest that the jury must have been moved by inadmissible influences such as prejudice, partiality or excessive sympathy that a verdict may be set aside even if there was some evidence in favor of the prevailing party."

The trial court was justified in setting aside the verdict.

After the motion to set aside the verdict was granted, the plaintiffs moved that the evidence be reported to this court without expense to them, and without security furnished by them, in event they did not prevail, under § 370 of the Practice Book. They also filed a motion for reasonable attorneys' fees for past and future services in prosecuting the action. The trial court denied both motions. The rule re-

quiring security is explicit and in a civil case gives the court no discretion. As to the allowance for counsel fees, the Superior Court has no such power to direct that a payment be made out of an estate in a contest over the admission of a will to probate as it has under General Statutes, § 5683, in an action seeking the construction of the will, and there is no fund in the possession of the Superior Court out of which such an allowance could be made. The power to make such an allowance, if it exists, is one primarily in the jurisdiction of the Probate Court. *First National Bank & Trust Co.* v. *McCoy*, 124 Conn. 111, 115, 198 Atl. 183; *Bohun* v. *Kinasz*, 124 Conn. 543, 548, 200 Atl. 1015.

There is no error.

In this opinion the other judges concurred.