[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
 BACKGROUND
These two companion cases are de novo appeals by Carl Dunham, Jr. (CV 92-0055308) and by Roger Dunham (CV 91-0055467) from a decree of the Probate Court for the District of New Milford, finding that portions of the Last Will and Testament of Jessica Scott Dunham, dated August 27, 1978, were the product of undue influence by her son, Carl Dunham, Jr. Roger Dunham is also the son of the testatrix, and the third party in the cases is her daughter, Joan Dunham Rogerson. By Stipulation the parties agreed to have these cases tried to this court based solely on the Probate Court record; therefore, no new evidence was taken.
Carl Dunhan [Dunham], Jr. seeks to have the testatrix's entire August 27, 1978 will admitted to probate; Roger Dunham seeks to have the 1978 will voided and to have the testatrix's August 7, 1970 will admitted to Probate; Joan Dunham Rogerson seeks to have this court reach the same decision as the Probate Court did. That decision set aside three provisions of the 1978 will that it determined were the product of undue influence; ClauseSecond, exercising a power of appointment under the will of Carl Dunham, Sr., in favor of Carl Dunhamn, Jr., to certain real property; Clause Third, forgiving the debt of Carl Dunham, Jr. to the testatrix; and Clause Fifth, appointing Carl Dunham, Jr. Executor under the will. The Probate Court then admitted the will to probate as modified by its decree. CT Page 124
 II Testamentary Capacity — Due Execution:
Counsel for Roger Dunham stipulated on the record at final argument on December 1, 1994, and in his September 13, 1993 compliance with pretrial order dated December 3, 1992 (page 3, paragraphs 3. and 5.) that at the time the testatrix executed the 1978 Will she had the requisite testamentary capacity, and that the 1978 will was duly executed in accordance with Connecticut law.
Counsel for Joan Dunham Rogerson did not stipulate to testamentary capacity or due execution, yet in final argument he made no reference to those issues, nor did he mention them in either his October 29, 1993 trial brief, or his November 21, 1994 supplemental trial brief, except to state without comment or argument on Page 6 of the trial brief, that the burden of proving the due execution of the will and the testamentary capacity of the testatrix is on the proponent.
The court concludes that Joan Dunham Rogerson leaves Carl Dunham, Jr. to his proof on these issues.
The record is replete with uncontroverted testimony that at the time of the execution of her will on August 27, 1978, Jessica Dunham had the required testamentary capacity (testimony of Constance Burkes, Gail Corrick, Robert Martin, David Cook, Joan Rogerson, Delores Brush, Richard Schilke, Richard A. Brush, Barbara Arnold, Margaret Welsh, Roger Dunham and others).
As to the issue of due execution of the will, both Constance Burkes and David Cook testified that Mrs. Dunham, in their presence, stated that the will was her will, signed it in their presence, asked them to witness it and that they both witnessed the will in the testatrix's presence and in the presence of each other. They also testified that they made and signed a self-proving affidavit, and such is part of the record.
The court finds that Carl Dunham, Jr. has sustained his burden of proving Jessica Dunham's testamentary CT Page 125 capacity and that there was due execution of the will.
 III Undue Influence — Burden of Proof and Standard of Proof
Roger Dunham claims that Carl Dunham bears the burden of proving that the will was not the product of undue influence, and that he must prove that by clear and convincing evidence or by a clear preponderance of the evidence.
Joan Dunham Rogerson claims that Carl Dunham has the burden of proving that the will was not the product of undue influence by clear and convincing evidence.
 Ordinarily, the burden of proving undue influence rests upon him who seeks to have a will set aside on this ground. . . .
Pepin v. Ryan, 133 Conn. 12, 15 (1946).
However, as suggested by the use of the word "[o]rdinarily" in the Pepin case (supra), there are circumstances under which the burden shifts.
 The rule that undue influence in respect to a legacy is to be presumed, when the relation of attorney and client subsists between the testator and the legatee, and the will is drawn by the latter is well established . . . . The presumption is one of fact. . . .
St. Leger's Appeal from Probate, 34 Conn. 434, 450
(1867).
 A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interest of the other.
Dunham v. Dunham, 204 Conn. 303, 322 (1987). CT Page 126
This court must determine the factual issue of whether Carl Dunham, Jr. was in a fiduciary or confidential relationship with his mother, the testatrix.
From the time his father (her husband) died in 1969, until she died in 1978, Carl frequently represented his mother in various matters. And then in 1978, he drew the very will which is the subject of this litigation. He also made arrangements for the execution of the will to take place at his office, with his secretary and a friend of his serving as witnesses. Carl took the acknowledgment and kept the will in his possession.
The court finds that Carl Dunham, Jr. was in a fiduciary relationship with the testatrix.
The proponent, Carl Dunham, Jr., argues that only where the natural object of the testator's bounty is excluded from participation in his estate, and the will is in favor of a stranger to the testator, who is either the lawyer drawing and advising as to its provisions, the guardian having charge of his person and estate, or the person occupying a clearly analogous position of trust, is there imposed upon the proponent of the will the obligation of disproving the exercise of undue influence in the making of the will. His point is that this will is not in favor of a stranger, but rather in favor of Carl Dunham, son of the testatrix; therefore, the presumption of undue influence does not arise and the burden of proof does not shift to the proponent, because the alleged influence was exerted by a child of the testatrix.
In support of this position, Carl Dunham, Jr. cites a number of cases on pages 20 and 21 of his trial brief. The court agrees that these cases stand for the proposition advanced by the proponent.
However, of those nine cases, seven are eighty or more years old, one is sixty-six years old, and one is thirty-four years old.
In 1987, the Conn. Supreme Court took up the issue of burden of proof in a case involving a fiduciary or confidential relationship. Although this case doesn't CT Page 127 discuss whether the fact that the fiduciary is the son of the testatrix should affect where the burden of proof lies, it clearly and without limitation spells out the burdens imposed on a fiduciary once such a relationship is found.
 Proof of a fiduciary relationship therefore imposes a twofold burden upon the fiduciary. Once `a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . (Citations omitted) Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence.
Dunham v. Dunham, 204 Conn. 303, 322-323 (1987).
The court therefore concludes that Carl Dunham, Jr. has the burden of proving by clear and convincing evidence that the subject will was not the product of undue influence.
 IV Undue Influence
In determining this factual issue, the court has carefully reviewed the evidence and evaluated the credibility of the witnesses as best it can without having had the opportunity of seeing them or of observing their demeanor in court.
 The burden of persuasion, therefore, in those cases requiring a showing of clear and convincing proof is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. CT Page 128
Dacey v. Connecticut Bar Assn, 170 Conn. 520-537 (1976).
The court considers the following evidence from the indicated witnesses to be credible and persuasive on the issue of undue influence:
1. Constance Burkes, who worked in Carl Dunham's law office with the testatrix for the entire year just prior to execution of the will, and who was a witness to the will:
Jessica was very strong willed and intelligent, and not easily influenced, and if she and Carl went head to head, she would have the final say.
2. Gail Corrick, a social worker at Yale-New Haven Hospital, in September 1978, who evaluated the testatrix's psychological makeup and social adjustment:
She was very clear and self contained, not someone who could be easily influenced, very strong in her thinking and what she wanted to do, very strong willed, committed to do what she would say, knew what she wanted, very much in control of her life, and once she made a decision unlikely anyone could have influenced her to change her mind.
3. Charles Beach Barlow, Senior Vice President of Colonial Bank:
Carl and his mother did his tax returns from 1973 to 1978; she was highly competent, not the kind of person to be easily influenced, had her own view of things, and was the kind of woman who would make up her own mind.
4. Robert Martin, a retired businessman, who saw her or talked to her regularly the last five years of her life, found her to be a brilliant person who was not easily influenced.
5. David Cook, a bank trust officer who had frequent business dealing with testatrix, and went over her will with her paragraph by paragraph and witnessed the execution: CT Page 129
It was very clear she knew what she was talking about, and the decisions represented her wishes. He saw her two weeks after she signed the will and she told him she had a full life, mentioned the will and said she was glad to have her affairs in order.
6. Joan Dunham Rogerson:
About a week before the will was executed, her mother was mentally alert; told her she was leaving all the real estate to Carl, and was asking for her support which was given. It appeared to her that her mother seemed to have made this decision on her own, as an act of her own free will and that this was absolutely a decision of her own free will, and that she knew the will contained the provisions her mother said it was going to contain, and that she had no problem with her mother's decision.
7. Richard Schilke, the testatrix's hairdresser every Friday from 1974 to end of September 1978:
A month after she signed her will, she was sharp as a tack, she said Carl and she had the property and that Roger was a playboy.
8. Richard A. Brush, who saw Jessica occasionally for many years, leading up to her death. She was a very smart woman who "didn't take nothing from nobody." In the summer of 1978 he saw no changes in her mental attitude or abilities; and she was not the kind of person who was easily influenced; "she had her ways and whatever she wanted done, that was it. It was done her way." "She was like the queen of the farm up there . . . she was the one with the whip; she had everything under control." That included Carl.
9. Joan Dunham Rogerson's further testimony:
Carl didn't want to do their mother's will but she (mother) wanted him to do it; Joan agreed with Carl that the property needed to go to Carl, and that they always believed that was the way it had to be. She also testified that in her deposition she said her mother's CT Page 130 will was a product of her own free will, and that when Roger told her he was going to sue Carl, she told him not to because it would be contrary to Jessica's wishes, and that she testified at the 1983 deposition that she never expected to receive anything from the estate and that her mother told her that upon her death the real estate would be Carl's and that she was putting everything into Carl's control so he would own it, to have the flexibility to manage it having total ownership and total control. Her mother was familiar with trusts being set up in wills; she trusted and depended on Carl and her, and she sought out advice, listened to it and then made her own judgment. Her mother never said to her that it was Carl's responsibility to pick up all the burdens and pay all the bills and then give her (Joan) some of the profit, and Carl never promised her anything nor did she ever ask him for anything.
10. Barbara Arnold, who, along with the testatrix, worked for Carl off and on in the 1970's and left there in June 1978:
Jessica knew what she was doing, was very much in control of herself, very decisive, not dependent on Carl, had her own views on things, expressed her feelings, was not easily influenced, and was familiar with wills, estates and trusts.
11. Margaret Welsh, who worked for Carl with the testatrix, from the spring of 1972:
She was very bright, well read, intelligent, very strong willed and independent, very determined, knew what she wanted and got it accomplished; would sometimes argue with Carl, would prove her point and it would be done the way she wanted it.
12. Joan Dunham Rogerson: In her deposition in 1983, she stated that her mother told her that on her death all the real estate would be Carl's that she (Joan) didn't suggest that any of the property should be left to Roger or her because those were her mother's wishes and she didn't find any fault with them, that she didn't get an impression from her mother that she was doing this because Carl was making her, not at all, that it was her CT Page 131 mother's own free will absolutely.
Also at the deposition she was asked if she expects anything and she said no, and that by the words her mother used in her letter explaining what she had done in the will, "I know he will be fair and do what he can to help you and Roger;" her mother meant that Carl was kind and would not do anything deliberate to hurt either one of us, and that she (Joan) didn't understand her mother's letter to mean any promises of anything in any way.
13. Maureen Donahue; presently a practicing attorney in Litchfield county, who was a paralegal assistant in the early 1980's for Carl:
Joan told her that Roger told her he believed that their mother wanted Carl to have all the property for a period of time to make it liquid when he would then divide it up, and Joan said she didn't know where Roger got that idea, that she thought it was crazy and couldn't believe that Roger could think that Jessica wanted it that way. Joan told her, "mother was very clear that she wanted all the property to go to Carl because he had always been there whereas Joan and Roger had chosen their own lives." Joan told her (Atty. Donahue) that she had willingly moved away from the property and was not entitled to any of it, and that Roger's theory was absurd, and that Joan knew her mother's intent was to benefit Carl and she supported that intent.
14. Carl Dunham:
He spent a tremendous amount of time, work and energy on the property and very little was done by either Roger or Joan. On about August 22, 1978, the testatrix asked him to prepare a will for her, and told him she wanted him to have all the real estate and wanted to forgive any obligation he had to her; he asked her if she was sure that is what she wanted, and she said this is what she wants because it was the only fair thing because he had worked very hard and was very interested in it so he should have it. He reviewed the draft of the will with her and she said that is what she wanted to do. During the 1970's Jessica often said that Roger wasn't dependable, didn't seem to care and never followed CT Page 132 through.
15. Frances Von Sacker, a close friend of Jessica:
In September 1978 at Jessica's request, she brought Roger to the hospital, and while they were there, Jessica asked Roger to step out of the room, at which time she told Frances she had rewritten her 1970 will and had written letters to Roger and Joan about the will, and she was concerned about Roger causing problems with Carl. Jessica told her that she had left the property to Carl and when she and Roger were leaving the hospital that evening, she told him that his mother was concerned there would be a problem when she died, and in response, Roger said, no problem, if I wanted a share, I would have done certain things, but it was just too damn much work (or words to that effect). Jessica told her many times that her decision on whom to leave the property to, would be based on who took an active part in working on the property.
16. Carl Dunham's further testimony:
In August 1978 when his mother said that it was only fair that he get the property, she said nothing about him having any obligation to Joan or Roger.
 V Conclusion
The testatrix's will is clear and unambiguous. it [It] exercises the power of appointment received from the will of Carl M. Dunham, Sr. in favor of "my son, Carl M. Dunham, Jr., to him and his heirs, absolutely and forever, in fee simple, free of trust." Jessica Dunham was familiar with trusts; therefore, her specific inclusion of the words "free of trust" unmistakably show that she did not intend Carl to have any trust obligations to anyone.
The contestants have not claimed that the will isn't clear. All three children were left something of monetary value in the will, therefore, the testatrix gave thought to all of her children; none were disinherited. CT Page 133
The court further finds that whether or not Carl Dunham, Jr. improperly obtained from Roger or Joan a waiver of hearing on the admission of the will to probate is irrelevant to this case, which involves issues of testamentary capacity, due execution and undue influence. It is not a question of what Jessica could have done, or should have done, but rather what did she do and was it the product of undue influence. The court is persuaded by clear and convincing evidence that she gave Carl far more than Roger or Joan because he contributed far more than they, and not because she was unduly influenced. Furthermore, even in her 1970 will, Jessica left very little of her estate and none of the real estate to Joan. The court concludes that the reason was that Joan had shown that she had little or no interest in making a go of the property. Roger had indicated his agreement to work toward his father's dream of managing the property successfully and profitably, so Jessica, in this 1970 will, left Carl and him equal shares of the property she had the power of appointment over from her husband's will. The court is persuaded that Jessica left all of this property to Carl in her 1978 will, because in the eight years between 1970 and 1978, Roger's actions spoke much more loudly than his words of 1970; in other words, Roger said one thing and did another.
In his closing brief dated November 28, 1994, Roger Dunham claims that Carl must show compliance with his ethical obligations as an attorney.
Carl's compliance or non-compliance with his ethical responsibilities as an attorney is relevant to the issues in this case only if it relates to the issue of undue influence; there was no undue influence, regardless of whether Carl violated any canons.
The parties have discussed in their briefs proponent's Exhibit E, which is a letter from Jessica to Joan and Roger dated August 24, 1978, which was three days prior to the execution of her will.
The court finds that this letter confirms Jessica's intent to leave all the property to Carl, also called Dowee. On page 1 she said: ". . . all the burden for this CT Page 134 fell on Dowee. He has devoted the last eight years of his life to this purpose. . . ." On page 2: "Not only has Dowee put his finances on the line but has devoted the last eight years of his life to the project. It's all very well to say that was his choice but the point of the matter is, that if he hadn't there would be nothing at all to divide and with his having done this, there's a very good possibility he will be able to realize a substantial recovery, but as with all real estate it takes a lot of time. In so doing he has sacrificed a lot of his life — he isn't married — doesn't have children or a home of his own and has lost a lot of precious time. In fact, he's had nothing but a lot of headaches that any amount of aspirin won't cure." On page 3: "So all this is to explain why I have placed everything in Dowee's hands as I feel that is the best (in fact only) way we can best come out of the situation. I know he will be fair and do what he can to help you and Roger — you, especially because of your added responsibilities."
The court finds the letter to be a clear cut expression of the testatrix's intent to leave all the property to Carl. The mere fact that she hopes, if the property ever results in a substantial recovery to Carl, that he will help out Roger and Joan, falls far short of overcoming the evidence in the entire case, that establishes by clear and convincing evidence that the will was not the product of undue influence.
The court concludes that it is highly probable that the testatrix's 1978 will was not the product of undue influence, and this probability is substantially greater than the probability that it was.
These findings contribute further to the court's conclusion, by clear and convincing evidence, that undue influence was not the cause of Jessica Scott Dunham's 1978 will.
Jessica Scott Dunham, at the time of the execution of her will on August 27, 1978, was a smart, independent, self-confident, well educated, self-assertive woman. She was well versed in personal business and financial affairs. Her will was clear and unambiguous, and her exercise of the power of appointment was specifically CT Page 135 "free of trust". Roger and Joan wish that their mother had left them more in her will than the amount she did leave them. The simple fact of the matter is that she chose not to for various reasons detailed in the court's discussion of the evidence, supra. Our law doesn't require anyone to justify why they have written their wills as they have, but since Carl had a fiduciary and confidential relationship with his mother, the court has fully considered whether he has sustained his burden of proving by clear and convincing evidence, that Jessica Scott Dunham's will of August 27, 1978, was not the product of undue influence.
Based upon all the evidence in the case, the court finds that Carl Dunham, Jr. has proved by clear and convincing evidence that no part of Jessica Scott Dunham's will of August 27, 1978 was the product of undue influence. The court finds that the evidence is clear and convincing that this will was in accordance with her wishes, she was not induced to make a will which she otherwise would not have made, and that there was no scheme, device, artifice or deception which made this will a product of undue influence.
The court in both these two cases, orders that the Last Will and Testament of Jessica Scott Dunham, dated August 27, 1978, be admitted to probate in its entirety.
RICHARD A. WALSH, J.